28 C.C.P.A.(Patents)

In re FREVERT et al.

Patent Appeal No. 4436.

Court of Customs and Patent Appeals.

May 5, 1941.

Rehearing Denied June 9, 1941.

Busser & Harding, of Philadelphia, Pa. (Frank S. Busser, of Philadelphia, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 3, and 6 to 14, inclusive, in appellants' application for a patent for an alleged invention relating to useful improvements in alloy steel for internal combustion valves or valve elements.

Appellants' involved application is for a reissue of their patent No. 2,142,781, issued January 3, 1939, on an application filed October 15, 1938.

Claims 1, 2, and 3, which are illustrative of the appealed claims (claims 6 to 14, inclusive, "being dependent claims"), read:

"1. An alloy steel which contains carbon .05 to 1.0%, chromium 11–17%, manganese .65 to 2.75%, silicon 2 to 5%, nickel 2 to 8%, copper 1 to 5%, *the percentage of nickel substantially exceeding the percentage of manganese,* the balance of the composition being substantially iron, said steel being characterized by exceptional strength at high temperature, high resistance to scaling, ductility when cold as well as when hot, and ready machinability and hardenability.

"2. An alloy steel which contains carbon .05 to 1.0%, chromium 11–17%, manganese .65 to 2.75%, silicon 2 to 5%, nickel 2 to 8%, copper 1 to 5%, *the percentage of nickel exceeding the percentage of each of the elements manganese and silicon,* the balance of the composition being substantially iron, said steel being characterized by exceptional strength at high temperature, high resistance to scaling, ductility when cold as well as when hot, and ready machinability and hardenability.

"3. An alloy steel which contains carbon .05 to 1.0%, chromium 11–17%, manganese .65 to 2.75%, silicon 2 to 5%, nickel 2 to 8%, copper 1 to 5%, *the percentage of nickel not being less than the percentage of manganese and silicon combined,* the balance of the composition being substantially iron, said steel being characterized by exceptional strength at high temperature, high resistance to scaling, ductility when cold as well as when hot, and ready machinability and hardenability." (Italics not quoted.)

The appealed claims were rejected by each of the tribunals of the Patent Office on the ground that they contained new matter in that the limitations—"*the percentage of nickel substantially exceeding the percentage of manganese,*" contained in claim 1, "*the percentage of nickel exceeding the percentage of each of the elements manganese and silicon,*" contained in claim 2, and "*the percentage of nickel not being less than the percentage of manganese and silicon combined,*" contained in claim 3—

were not disclosed in the application upon which appellants' patent issued. (Italics ours.)

With the exception of the hereinbefore italicized limitations, appealed claims 1, 2, and 3 are identical with claim 1 of appellants' patent.

In rejecting the appealed claims on the ground that they contained new matter, the Board of Appeals said:

"It is clear from the reissue oath that the original specification so stated the percentages of nickel and manganese as *to include alloy steels inoperative for applicants' purpose*. It is also stated in the oath that the one essential feature is not specified in the patent specification and that in any one composition the percentage of nickel must substantially exceed the percentage of manganese.

"This condition was revealed, according to the oath, only by repeated reading of the specification and comparison of the same with very numerous tests of variable percentages of said constituents (meaning manganese, silicon and nickel).

"The oath continues 'It became evident that it would be possible to produce an alloy steel that would be within the terms of claim 1 * * * that would not have all the characteristics ascribed to the invention in the description.'

"What these numerous tests were we do not know, *but apparently applicants became aware of or discovered the further limitation on the percentage of nickel necessary in the alloy after the patent was granted.*

"*It, therefore, seems obvious that the claims are directed to new matter and it is clearly suggested by the wording of the oath that new matter is involved.* Certainly, no one relying exclusively on the original specification would place any such critical limitation on the amount of nickel as is stated in claims 1, 2 and 3.

"We do not find in the original disclosure any disclosed or obvious critical relation between the nickel and the combined silicon and manganese or each of the silicon and manganese or the nickel and manganese." (Italics not quoted.)

The Board of Appeals denied appellants' petition for reconsideration of its original decision and, in so doing, adhered to the views it had theretofore expressed.

Section 4916 of the Revised Statutes, so far as pertinent to the issues here presented, reads: "Sec. 4916. [U.S.C., title 35, sec. 64, 35 U.S.C.A. § 64.] Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. * * * but no new matter shall be introduced into the specification * * *."

It is contended here by counsel for appellants that the italicized limitations contained in appealed claims 1, 2, and 3 are clearly disclosed in appellants' patent, both in the written specification and by necessary construction, in claims 2 and 3 thereof (allowed claims numbered 4 and 5), which read:

"2. An alloy steel which contains carbon .05 to .65%, chromium 14 to 15.5%, manganese .90 to 1.3%, silicon 3 to 4%, nickel 4.5 to 7.5% and copper 2.25 to 3%, the balance of the composition being substantially iron, said steel being characterized by exceptional strength at high temperature, high resistance to scaling, ductility when cold as well as when hot, and ready machinability and hardenability.

"3. An alloy steel which contains carbon .05 to .65%, chromium not varying more than two per cent from 14.75%, nickel not varying more than two per cent from 6%, silicon not varying over one per cent from 3.5%, manganese not varying over .5% from 1.1%, copper not varying over one per cent from 2.5%, the balance of the composition being substantially iron, said steel being characterized by exceptional strength at high temperature, high resistance to scaling, ductility when cold as well as when hot, and ready machinability and hardenability."

It will be observed that in claim 2 of the patent (allowed claim 4) the stated percentage of nickel is greater than the stated percentage of either manganese or silicon; that in claim 3 of the patent (allowed claim 5) the stated percentage of nickel is greater than the stated percentage of manganese but not necessarily greater than the stated

percentage of silicon; and that in neither of those claims is the required percentage of nickel as great as the stated percentage of manganese and silicon combined.

It appears from appellants' patent that the manganese, silicon, and nickel might be present in varying percentages. We quote:

"* * * Manganese over .65% and under 2.75% and *preferably .9 to 1.2%. Silicon 2 to 5%, preferably 3 to 4%. Nickel may vary within a wide range, but should be over 2% and under 8%, and is preferably between 5 and 7.5%.* (Italics not quoted.)

* . * * * * *

"Specific examples of alloy steel possessing in high degree all the qualities hereinbefore enumerated as essential [so far as the percentages of nickel, manganese, and silicon are concerned] are:

| Ni | Mn | Si |
|------|------|--------|
| 5.25 | 1.08 | 3.33 |
| 7.25 | 1.18 | 3.51" |

It is apparent from their patent that appellants disclosed alloy steels in which the stated percentage of nickel was greater than the stated percentage of either manganese or silicon, or both. However, there is nothing in the patent to indicate that, in order to obtain an alloy steel having the characteristics therein described, it was necessary that the percentage of nickel contained therein should be substantially in excess of the percentage of manganese (as required by appealed claim 1), or that the percentage of nickel should exceed the percentage of each "of the elements manganese and silicon" (as stated in appealed claim 2), or that the percentage of nickel should be not less than the percentage of manganese and silicon combined (as stated in appealed claim 3).

It is stated in appellants' "Reissue Oath" that appellants' patent is "inoperative or invalid as to certain claims thereof for the reason that the specification thereof is defective and insufficient, and that such defect and insufficiency *consists particularly in so stating the percentages of manganese and nickel as to include possible alloy steels that would not accomplish the objects of the invention and particularly in the failure to specify that the percentages of manganese and nickel shall be such that the percentage of nickel shall substantially exceed the percentage of manganese and, to produce the best results, should also exceed the percentage of silicon and may, with advantage, exceed the percentage of manganese and silicon combined;* * * * that one essential feature of the invention is that in any one composition *the percentage of nickel must substantially exceed the percentage of manganese and in the best embodiment of the invention should also exceed the percentage of each of the elements manganese and silicon and preferably should exceed the percentage of manganese and silicon combined;* that such errors so particularly specified arose as follows: that the possible combinations of variable factors with respect to percentages of the various constituents are so numerous that *it was only by repeated reading of the specification of the original patent and comparison of the same with the very numerous tests of variable percentages of said constituents that it became evident that it would be possible to produce an alloy steel that would be within the terms of claim 1 and of certain of the claims dependent thereon that would not have all the characteristics ascribed to the invention in the description."* (Italics not quoted.)

It is evident from the quoted excerpt from appellants' "Reissue Oath" that it was not until after appellants' patent issued and numerous tests had been made that it was ascertained that, in order to secure an alloy steel having the characteristics described in the patent, it was necessary that the percentage of nickel be greater than the percentage of manganese, or that it be greater than the percentage of each of the elements manganese and silicon, or that it be not less than the percentage of manganese and silicon combined. That being so, it could not have been the intention of appellants to secure in their original application claims covering such subject matter.

In view of the fact that appellants neither disclosed nor had any intention of claiming the subject matter defined in the italicized portions of appealed claims 1, 2, and 3 in the application on which their patent issued, they are not entitled to claims in a reissue application covering such subject matter. Parker & Whipple Company v. Yale Clock Company, 123 U.S. 87, 100, 101, 8 S.Ct. 38, 31 L.Ed. 100; Myles Morgan v. Alden M. Drake et al., 36 F.2d 511, 17 C.C.P.A., Patents, 729; In re Whittelsey, 83 F.2d 894, 23 C.C.P.A., Patents, 1268. See, also, Kollsman v. Carbonara, 88 F.2d 966, 24 C.C.P.A., Patents, 1149, and Walker on Patents, Deller's Edition, volume two, sections 310 and 311, pages 1354 to 1359, and cases therein cited.

Counsel for appellants here rely upon the decisions in the following cases: The Chapman-Stein Company v. Rust Engineering Company, decided by the District Court for the Western District of Pennsylvania, wherein it was held that claims in a reissue patent which were narrower than the claims of the original patent and *which contained limitations disclosed and intended to be claimed in the original patent were valid* (affirmed by the Circuit Court of Appeals, Third Circuit, Chapman-Stein Company v. Rust Engineering Co., 57 F.2d 38); Holzhauer Products Corporation v. Max Zaiger, 15 F.Supp. 1006, 1012, decided by the District Court for the District of Massachusetts, wherein it was held that a claim in a reissued patent which did not "introduce * * * new element * * * but" stressed "relationship of * * * elements which did not appear in the original claims, although suggested as possible in the drawings and specifications" was valid; Fehr et al. v. Activated Sludge, Inc., 84 F.2d 948, wherein it was held by the Circuit Court of Appeals, Seventh Circuit, that a claim in a reissued patent, which was narrower than a claim in the original patent and which covered subject matter *included within the original broad claim and which was intended to be claimed in the original patent*, was valid; and Steiner & Voegtly Hardware Co. v. Tabor Sash Co., 178 F. 831, decided by the Circuit Court, District of New Jersey, wherein it was held that claims in a reissued patent which were narrower than the claims of the original patent and which were limited to the patentee's "actual invention" *disclosed in his original patent were valid.*

It will be observed that in all of those cases the narrowed reissued claims were for subject matter disclosed in and apparently intended to be covered by the original patents, whereas, in the instant case, the subject matter defined in the italicized portions of appealed claims 1, 2, and 3 was not only not disclosed in appellants' patent, but obviously was not intended to be claimed therein.

We are of opinion, therefore, that the appealed claims contain new matter as was held by each of the tribunals of the Patent Office. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.