**Sol HARPMAN, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 3263–58.**

United States District Court
District of Columbia.

Dec. 11, 1959.

---

William G. Konold, and David Loeffler, for plaintiff.

Raymond E. Martin, U. S. Patent Office, Washington, D. C., for defendant.

RICH, Judge.*

This action was brought under 35 U.S.C. § 145, by virtue of which this Court has jurisdiction of the parties and the subject matter.

The plaintiff, Sol Harpman, asks the Court to authorize the Commissioner of Patents to grant a patent to him on his application, Serial Number 392,126, filed November 16, 1953, entitled "Send-and-Return Envelopes." Claims 3, 4, 7, 8 and 9 are put in issue by the pleadings.

The title of the application is fairly indicative of the nature of the subject matter of this invention, which is described in the opening paragraph of the specification as relating to a send-and-return envelope of such type that the same envelope can be used for correspondence from the sender to the receiver and from the receiver back to the sender.

To this end, an important part of the envelope is a flap having a central crease along its length so that it can be folded approximately in half and tucked into the open side of the envelope, which is of the kind having a window in that side which is opposite the side to which the flap is attached.

The parts are so dimensioned and proportioned that when the folded flap is tucked into the envelope, it does not obscure any part of the window. The unfolded flap has a line of glue along at least a part of the edge which will face the envelope when the flap is folded down against it, and this glue is so arranged as not to overlie any part of the window.

The plaintiff, who testified as a witness, is experienced in the envelope business in both the manufacturing and selling aspects of it, having been so engaged continuously since 1931. He and other witnesses established to the satisfaction of the Court that envelopes made in accordance with his invention have gone into commercial use in a very substantial way.

The somewhat unusual, if not remarkable, aspect of the case is that after Harpman filed his patent application and after showing his invention at one envelope manufacturers' convention, sending out one form letter under the name of Sol Harpman Enterprises, and after the invention had been described in one specialized publication, he was able to obtain eighteen licensees who executed formal license agreements providing for a down payment of one hundred dollars and for royalties of from twenty cents to thirty cents per thousand envelopes, which royalties were, as he testified, to be held "in escrow" until such time as he might obtain the issuance of a patent.

To be sure, the number of licenses may be subject to some modification when viewed realistically inasmuch as six of them appear to have been given to differ-

---

* Judge, U. S. Court of Customs and Patent Appeals, sitting by designation.

ent divisions of the same company, which company, however, is said to be one of the largest manufacturers of printed envelopes in this country, if not the largest such manufacturer.

The evidence shows that pursuant to these license agreements the licensees render reports of their sales, including the names of their purchasers or customers, from which data it appears that during a period of six years from eighteen to twenty million envelopes embodying the invention have been sold, over four million seven hundred housand having been sold in the year 1958, with prospects for the year 1959 in excess of five million.

The broadest claim in suit is claim 7, which reads as follows:

"A send-and-return envelope comprising, a pocket portion formed by back and front sheets joined at bottom and side edges thereof, means forming an opening in said front sheet through which an address on the contents of the envelope will be visible, a flap attached to the free upper edge of said back sheet and of sufficient width to extend down over said opening with a very small portion below said opening, a strip of glue along the edge of said flap, said flap having a central crease along the length thereof to enable said flap to be folded inside the envelope over the contents thereof without extending down to said window, and means forming a return address on the outside of said flap."

Claim 9 contains two additional limitations: First, that the strip of glue shall be of substantial width over a portion of its length but diminished where said flap covers said window; and second, a somewhat ambiguous limitation, for lack of proper antecedents, reading, "and means for joining said top edges." This is the final clause in the claim. It is not difficult, after studying the disclosure of the specification in conjunction with the drawings forming a part thereof, to discern that the last-mentioned limitation of claim 9 refers either to an adhesive sticker placed over the open mouth of the envelope or a staple driven through the edges adjacent to the open side.

During the trial plaintiff made it clear that he does not rely on said last-mentioned limitation in urging the patentability of claim 9.

There are also in the case dependent claims referring back either to claim 7 or claim 9, namely, claims 3, 4 and 8, which merely add to their parent claims the said limitation with respect to the staple or the gummed label. These dependent claims have been withdrawn from suit, and as to them, therefore, the suit is dismissed.

This leaves for consideration a somewhat irregular problem with respect to claim 9, the second or final limitation of which is no longer relied on and which the plaintiff would like to cancel from the claim. This would have the effect, of course, of broadening the claim somewhat.

The law has long been established that this Court shall consider suits of this nature on the basis of the claims as considered by the Patent Office, and, indeed, 35 U.S.C. § 145 is specific in saying that we shall adjudge the plaintiff's right to a patent for his invention "as specified in any of his claims involved in the decision of the Board of Appeals."

It is clear to me, however, that if claim 7 is allowable, claim 9 without the final limitation would also be allowable, since even without it, it is narrower than claim 7. Amendment would cure a defect the presence of which would make me reluctant to say the claim should be allowed.

The Court, therefore, recommends to the Patent Office that plaintiff be permitted to cancel the aforesaid second limitation from claim 9, which will have the effect of improving it in form by the removal of a clause which lacks an antecedent. If plaintiff wishes to make this change, he should file an appropriate amendment forthwith, calling attention to this recommendation.

In rejecting claims 7 and 9 which now remain in the case, both the Examiner in his answer and the Board of Appeals in its opinion limited the prior art on which reliance was placed to the following three patents:

Wittmann, 1,164,606, December 14, 1915.

Steinke, 1,145,935, July 13, 1915.

Welliver, et al., 2,355,348, August 8, 1944.

During the trial of the case, the defendant brought in two additional patents said to have been cited during the prosecution of the application in suit, namely,

McCain, 1,645,148, October 11, 1927.

British Patent 640,797, published July 26, 1950.

This was done notwithstanding defendant's assertion in his answer that the plaintiff is not entitled to a patent "for the reasons given and in view of the references cited in the Examiner's answer and the decision of the Board of Appeals in that application." From the standpoint of fair trial, I have misgivings about this submission of old references which have been dropped in the Patent Office and now sought to be retrieved as relevant prior art.

The Court should, of course, consider anything the parties wish to produce having a bearing on the validity of any patent which might be granted. On the other hand, it would seem fair that some warning should be given that reliance is to be placed on old references not mentioned by either the Examiner or the Board at the concluding phases of the Patent Office proceedings.

The last paragraph of 35 U.S.C. § 282 requires that in an infringement suit prior art references shall not be relied on unless thirty days before trial notice of intention to do so has been given, with the provision that in the absence of such notice the Court may admit such prior art on such terms as the Court may wish to prescribe. This statute is, of course, not binding here but is indicative of what Congress deemed to be fair procedure.

■ It is, therefore, suggested that in the future the Patent Office give fair warning to plaintiffs in suits of this nature in pleadings or otherwise when it intends to produce new prior art, or old prior art of record which the Examiner no longer relies on. The pleadings should not be so framed as to mislead.

In this case the admission of the added prior art did not work any real hardship because, as to the British patent, the plaintiff referred to it in examining his own witnesses, and as to the McCain patent because it showed no more, for the purpose for which it was introduced, than a common practice of which the Court was willing to take judicial notice.

We come now to the merits of the case.

The principal reference is Wittmann, which shows a send-and-return envelope differing from plaintiff's envelope in that it has no window and in that it has a second flap in addition to the one present in the plaintiff's envelope. The position of the Patent Office was that there would be nothing unobvious about adding to Wittmann a window as shown in the secondary reference, Steinke, which shows a send-and-return envelope having a window.

The Welliver, et al. patent need not be considered since it was in effect stipulated out of the case by dropping the claims directed to the feature of using a staple or a gummed label, and it was only against such a feature that this patent was cited.

As I understand it, Steinke has never been relied on for anything other than the showing of a window in a send-and-return envelope, and, therefore, the problem is simply whether the subject matter of claim 7, which is the broadest claim, is patentable over Wittmann in view of Steinke.

The legal requirements, of course, are those set forth in Sections 101, 102 and 103 of 35 U.S.C., namely, novelty, utility and unobviousness. There is no question as to the first two requirements, and the

sole problem is whether the subject matter of claim 7 would be obvious to one of ordinary skill in the art as of the time the invention was made in view of the two main references.

■ As has often been said, this question of obviousness is necessarily a matter of subjective opinion. The question, however, is not whether it was obvious to the Examiner or the Board of Appeals or would be obvious to this Court, but whether it would have been obvious to men of ordinary skill in the envelope field. It seems to me that in this case the evidence answers this question in the plaintiff's favor beyond question. A mere inspection of the prior art, namely, the drawings and specifications of the two 1915 patents, makes the prior art appear to be deceptively close. In reviewing the specific limitations of claim 7, it is indeed difficult to put one's finger on the precise point at which it distinguishes from the prior art, yet, taken as a whole, as section 103 requires, it clearly does, and no one has alleged that it is fully anticipated by any reference. The argument is simply that, in view of the references, the subject matter of claim 7 would be obvious.

One of the most significant points brought out by defendant as to claim 7 is that it does not contain any limitation as to the direction of the folding of the flap along its central crease, which would require that the fold be made as shown by the plaintiff's application rather than in the opposite direction, as shown by the Wittmann reference.

However, it seems appropriate that claim 7 should omit any such limitation. Whereas Wittmann must fold his flap so that the "V" formed by the first two flap sections when folded points outwardly from the envelope, the fact appears to be that plaintiff's invention can be practiced by folding the flap either that way or the opposite way, as he has described it, although for practical reasons, it seems best to fold plaintiff's flap with what might be described as a wrap-around fold, as shown by the exhibits of commercial envelopes which were introduced in evidence.

■ This point, however, is but a single element in the attempt to take the plaintiff's invention apart bit by bit in order to show obviousness in each of its differences from the prior art. In determining patentability, however, we are not concerned with the obviousness *of each bit* when dissected out and after considering the applicant's disclosure, but with the obviousness of his *whole* invention as claimed.

I cannot escape the conclusion that the experts in the envelope art have themselves passed judgment on this issue, not so much in the commercial success which the invention has enjoyed in the form of large sales, but in the tribute paid to the invention by envelope manufacturers in taking licenses, even in the absence of an issued patent. To be sure, they did not cost too much, and in the event no patent issues, each licensee will be out of pocket only one hundred dollars. Nevertheless, they have incurred contractual liabilities in the belief that a patent may issue, and they have done this presumptively in the face of knowledge of the Wittmann and Steinke patents that issued in 1915, expired in 1932, and have been available to the public for free use ever since.

Another persuasive point was developed by the testimony of a witness experienced in the manufacture of envelopes, formerly employed by one of the larger envelope manufacturers of the country and now operating his own company, to the effect that it is not feasible to make the Wittmann envelope by modern methods on known envelope-making machinery. One reason given for this was that Wittmann requires two glue strips at separated locations on his flap. It can be argued, of course, that one of these can be eliminated by omitting the flap extension which is used to seal the envelope when it is sent out for the first time, and that this, in turn, would be but to omit the function of that flap, but there is no suggestion for making such an omission. It can also be argued, as it was forcefully argued, that it would be

obvious to put a window in Wittmann's windowless envelope and then adjust the length of his flap and the location of his glue so as to meet applicant's claim. There is, however, no suggestion for doing this.

■■ On the whole, therefore, and bearing in mind the rule that the evidence must be clear and convincing and carry thorough conviction that the Patent Office erred in refusing the patent, I am of the opinion that claims 7 and 9 are patentable, the latter without regard to its final limitation.

Judgment is, therefore for the plaintiff.

This opinion may stand as containing the necessary findings of fact and conclusions of law.