William L. **HENDRIX**, Appellant,

v.

David L. **LADD**, Commissioner of Patents, Appellee.

No. 16347.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 7, 1961.

Decided Feb. 8, 1962.

As Amended April 24, 1962.

Petition for Rehearing Denied May 16, 1962.

Petition for Rehearing En Banc Denied En Banc May 16, 1962.

Mr. Floyd H. Crews, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Dos T. Hatfield, Washington, D. C., was on the brief, for appellant.

Mr. George C. Roeming, Atty., U. S. Patent Office, with whom Mr. Clarence W. Moore, Sol., U. S. Patent Office, was on the brief, for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a patent case, under Section 145 of Title 35 of the United States Code. The Patent Office rejected plaintiff-appellant's application for a patent, and the District Court denied relief. This appeal followed. The District Court and the Patent Office both were of the view that the application failed to define a patentable invention over the prior art.

Appellant's application, Serial No. 250,003, deals with a means of electric power distribution. It describes a self-supporting aerial electric power distribution cable system adapted to carry at least 2,000 volts. In this system, as apparently in all other aerial cable systems of primary distribution lines, the electrical conductors are supported from, and also protected by, a strong steel wire or "messenger," which is supported on poles.[1] The conductors are situated beneath the messenger wire, where they are engaged at intermediate points between the supporting poles by insulating hangers (clamps) which are attached to and depend from the messenger wire. These hangers provide support for the conductors, as well as maintaining them in a predetermined and inflexible minimum-maximum spaced relationship. This arrangement permits considerable reduction in the thickness of the insulated sheath conventionally used on the conductors.[2] Appellant's cable system,

---

1. The poles are erected at regular intervals along the geographic terrain the aerial cable is to span. The messenger wire is connected to the topmost part of each pole, thereby forming a continuous line parallel to the ground.

2. These hangers, constructed of insulating material, are each composed of two halves which, when bolted together, form a unitary gripping device designed both to encompass and be maintained by the messenger wire, and to encompass, support, and maintain the conductors in proper electrical isolation.

and most other aerial cable systems, have a distinct cost advantage (in most areas) over underground cable.

In recognition of these and other claimed advantages, Hendrix was granted a patent for "Aerial Cable," No. 2,820,-083, on January 14, 1958. The specifications in No. 2,820,083 read in part as follows:

"The present invention provides an improved aerial cable in which insulating clamps are installed at regular intervals along the cable length intermediate the poles, which clamps are employed to position and space the 'hot' conductors, and to support them from the messenger. The wires of my improved cable are thus installed on and spaced between full voltage insulators throughout the circuit length, and do not require shielding.

\*    \*    \*    \*    \*    \*

"My novel aerial cable clamp is characterized further and in the present embodiment in that the conductor sockets 21, 22, 23 are equidistant and define more particularly an equilateral triangle, with the lowermost socket 23 vertical with messenger recess 20, and with intermediate sockets 21, 22 arranged laterally of the plate and spaced equally from the said recess 20 as well as from the lower socket 23."

Appellant's present application "aims to provide a novel self-supporting aerial cable system wherein a messenger or supporting strand carries one or more conductors in a calculated permanent and uniform mutually spaced relation." This application seems to claim invention of the entire cable *system*. It is labeled as an application for a Self-Supporting Aerial Cable System, Method and Means. It can thus be differentiated from No. 2,820,083, which covers a particular cable, and especially a cable in which the aerial clamps utilize equidistant conductor sockets forming an equilateral triangle, with the lowermost socket vertical with the messenger wire.[3] The elements of the system which appellant now claims are (1) a supporting messenger wire, (2) a spacing holder which fastens conductors at a predetermined distance from each other, and (3) conductors. "These main component elements \* \* \*, messenger, conductors and spacing holder means, make up the novel aerial cable \* \* \* regarded as a structural unit \* \* \*."

In order to determine whether this system was patentable, the Patent Office was required, of course, to examine previously granted patents. Vail Patent No. 279,289 relates to a telegraph or telephone line. The conductors, of copper, are suspended from, and supported by, iron or steel messenger wires. Supporting racks, suspended from the messenger wire at locations spaced between adjacent pairs of poles, support the conductors in a predetermined spaced relationship. Although the Vail Patent does not cover an electric power distribution system, we believe that the Board of Patent Appeals and the District Court were correct in finding the features of Vail to be obviously adaptable for electric power distribution. Fletcher Patent No. 770,278 discloses a rack for supporting a plurality of electrical conductors in a predetermined, spaced, insulated relationship. The Primary Examiner relied on both Vail and Fletcher in rejecting appellant's claim.

In sustaining the Examiner, the Board of Patent Appeals cited five additional patents as prior art. Emmons Patent No. 1,538,428 was granted for insulating clamps for electric lines. Each clamp consists of a base portion for receiving a conductor and a key portion which clamps the conductor in place onto the base portion. The base may be secured to, or made a part of, an ordinary pole-

---

3. The application now before us, No. 250,-003, was filed on October 5, 1951. The application in No. 2,820,083, was filed on June 2, 1955. We do not suggest that the granting of the latter application in any way prejudices the application in No. 250,003.

line cross arm, thus holding the conductors and wires in a predetermined spaced relationship. Hobart Patent No. 2,167,510 deals with an electric power cable which includes three conductors in a single pipe or jacket. Insulating elements within the pipe hold the conductors in a spaced relationship, and the jacket is filled with an insulating gas. Because of both the spacing and the gas, the conductors require a relatively small amount of insulation. The Nightingale Patent No. 1,813,863 relates a line for distributing electrical power to lighting units. The line includes a messenger wire, electrical conductors, and hangers which are suspended from the messenger wire and hold the conductors in spaced insulated relationship. An electric power transmission line is covered by the Fennel British Patent No. 310,070. The conductors are supported from poles and spaced above each other in vertical alignment. At spaced locations between the poles, insulating bridge members are secured between each pair of adjacent conductors. Finally, the Swiss patent to Kunze, No. 63,677, deals with an electric power distribution line. Frame spacers are clamped to conductors at spaced intervals between the supporting poles and maintain the conductors in spaced parallel relationship.

In Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 157, 229 F.2d 37, 40, cert. denied, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956), this court said:

"[A] mere preponderance of the evidence is not sufficient with regard to invention; the Patent Office finding must be accepted if it is 'consistent with the evidence,' the Patent Office being an expert body preeminently qualified to determine questions of this kind."

In our view, the District Court correctly held in this case that the Patent Office finding was "consistent with the evidence," and should be sustained.

Affirmed.

DANAHER, Circuit Judge (dissenting).

I think this applicant was entitled to a patent on his method of storm-proofing a primary conductor. After my study of the record, I was impelled to conclude not only that appellant's system is new and useful and not obvious, but it fills a need never well met by others, and does so at less cost than any method previously devised or presently in use. To clarify the picture, we all know that electric power is transmitted cross-country at very high voltages, often in excess of 100,000 volts. At a substation, that high voltage must be transformed for transmission through city streets and towns on a primary distribution circuit, preferably it is shown, by such a system as Hendrix has invented. The high voltage is stepped down to some 2,400 to 13,800 volts which the Hendrix method makes it possible to distribute, economically, safely and largely uninterruptedly. The power is thus transmitted to smaller transformers, again to be stepped down to 110 or 220 volts to be passed over secondary distribution lines for domestic or local industrial use.

In our national economy in which electric power has become vitally essential, it is of the utmost importance that an aerial primary distribution circuit be available which will effectively resist storm damage, reduce if not eliminate interruptions in service to industry, to hospitals and homes, and do so at reasonable cost. Hendrix met the problem. No one involved in the prior art had done so.

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention." [1]

1. Diamond Rubber Co. v. Consolidated Tire Co., 290 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911).

I think Hendrix has added a new and valuable article to the world's utilities, and he is "entitled to the rank and protection of an inventor." [2]

The principal reference relied upon and cited against Hendrix is the Vail patent No. 279,289, issued June 12, 1883. Vail was dealing with telephone wires not even remotely similar to those necessary in a primary distribution conductor. His bare wires transmitting power from a couple of dry cell batteries are utterly useless for the transmission and distribution of electric power under the high voltage which Hendrix permits. How Vail can be regarded as prior art eludes me. The Commissioner argues on brief:

> "It is apparent, then, that the only recitations in the claims *not* met by the Vail structure are the references to the *construction as being adapted to carry at least 2000 volts, the insulative sheath on the conductors, and the mechanical details of the hanger-spacer clamp.* It is respectfully submitted that the Board of Appeals and the District Court were correct in finding * * * these features to be obvious to a person of ordinary skill in the art." (Emphasis added.)

It is precisely in the three "only recitations" that invention is found in Hendrix. When it is argued that an engineer of ordinary skill in the art of distributing electrical energy would read Vail as suggesting Hendrix, the short answer is that no one did.

In my view Hendrix should have prevailed in the Patent Office. My observation does not run with equal force against the conclusion of the District Court. The District Judge obviously felt bound by and he relied upon Abbott v. Coe,[3] as his opinion shows. We had made him its prisoner by the status we had accorded to a mere presumption. We have mathematically squared the adverse force and effect of that presumption in Esso Standard Oil Co. v. Sun Oil Co.,[4] relied upon by the majority here.

The economy of the United States rests importantly, one might say essentially, upon our patent system which traces its origins to the Constitution itself.[5] Recognizing its importance, and in its aid, Congress in 35 U.S.C. § 102 has provided that a "person shall be entitled to a patent" *unless* its issuance is to be precluded under circumstances carefully spelled out. In my view, none of them has application here. Even the convoluting constrictions of the "presumptions" drop out of the case, as I assay the evidence in this record. I would adjudge that this applicant "is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Appeals,[6] as the facts in the case may appear * * *." [7]

2. Ibid.; and see L-O-F Glass Fibers Company v. Watson, 97 U.S.App.D.C. 69, 72, 228 F.2d 40, 43 (1955).

3. 71 App.D.C. 195, 109 F.2d 449 (1939).

4. 97 U.S.App.D.C. 154, 229 F.2d 37, cert. denied 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956).

5. U.S.Const. art. I, § 8, cl. 8.

6. Hendrix Claim 25 quoted as representative by the Board of Patent Appeals reads:
   "In a self-supporting aerial electric power distribution cable of the class adapted to carry at least 2000 volts, in combination, a supportive messenger strand, means for anchoring it at spanning elevated supports, a plurality of conductors associated in a single circuit and having each an insulative sheath of thickness greatly reduced from that standard with and necessary to cables of like capacity and whose conductors are ordered in contact with each other, and a plurality of light weight rigid non-conductive hanger-spacer elements positioned along the messenger between said anchoring means, said elements including members releasably clamped around and mounting resilient sleeves in individual encompassing engagement with the messenger and conductors and thereby insulatively maintaining them in separately spaced ordered relation."

7. 35 U.S.C. § 145 (1958).

As a matter of subjective opinion based on the facts of record, and according to the appellant that "wider latitude" [8] we are entitled to exercise, I think Hendrix here met the standard of invention. He is entitled to the reward he deserves.[9]

---

8. Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 214, 181 F.2d 280, 284 (1950).

9. L-O-F Glass Fibers Company v. Watson, supra note 2, 97 U.S.App.D.C. at 76, 228 F.2d at 47.