Victor F. DAHLGREN, and Sanders Associates, Inc., Plaintiffs,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 1573–62.

United States District Court
District of Columbia.
June 19, 1964.

W. Brown Morton, Jr., Willis H. Taylor, Jr., Pennie, Edmonds, Morton, Taylor & Adams, Washington, D. C., for plaintiffs.

Clarence W. Moore, Solicitor, U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 to obtain judgment authorizing defendant, Commissioner of Patents, to issue Letters Patent of the United States containing claims 1, 3, 4, 6, 10, 14, 19 through 23, and 25 through 30 of an application serial number 459,841 filed October 1, 1954 by the co-plaintiff, Victor F. Dahlgren, and assigned to the other co-plaintiff, Sanders Associates, Inc.

The invention described in the application relates to a method of bonding sheets of copper to sheets of tri-fluoro-chloro-ethylene (disclosed as trademarked "Kel-F"). The method comprises oxidizing the copper sheet in a chemical bath to develop a coating of black cupric oxide, placing the coated sheet of copper in contact with a sheet of Kel-F, and applying heat and pressure to effect adherence. The method of the application results in products including a sheet of Kel-F clad on one or both sides with copper, a copper sheet clad on both sides with Kel-F, and a number of sheets of Kel-F intermixed with copper sheets to form a laminated structure. The application also indicates that the method may be used to form "printed circuits", wherein some of the copper layer may be removed by a suitable etching technique to secure the desired configuration and the circuit is encapsulated between the layers of Kel-F.

At trial plaintiffs withdrew claims 1, 3, 4, 10, 14, 19, 20, 21, 23, 25, 27, 29, and 30, leaving only claims 6, 22, 26 and 28 before the Court for adjudication.

Claims 6 and 22 adequately represent the issues posed, and are listed as follows:

"*Claim 6:*

"The method of manufacturing a laminate of tri-fluoro-chloro-ethylene and ribbons of copper, comprising immersing a sheet of clean copper in a hot aqueous solution consisting essentially of a chlorite selected from the group consisting of sodium chlorite and potassium chlorite and an alkali metal hydroxide selected from the group consisting of sodium hydroxide and potassium hydroxide, the relative proportions by weight being within the range of about one part chlorite per part of the hydroxide to one part chlorite for each two hundred parts of the hydroxide, thereby rapidly oxidizing the exposed surfaces of said sheet and producing a homogeneous coating of cupric oxide over said exposed surfaces; placing said cupric oxide coated sheet of copper in contact with a first preform sheet of tri-fluoro-chloro-ethylene thicker than said copper sheet; applying pressure substantially homogeneously throughout the surface area of said sheet at a temperature not less than the no-strength temperature of said tri-fluoro-chloro-ethylene nor greater than the charring temperature of said tri-fluoro-chloro-ethylene for such time as to compress said sheets and effect adherence therebetween; removing excess coated copper to provide a plurality of ribbons of copper; placing a second preform sheet of tri-fluoro-chloro-ethylene thicker than said copper sheet in contact with said ribbons of copper; and applying pressure throughout the surface area of said sheets at a temperature not less than the no-strength temperature of said tri-fluoro-chloro-ethylene nor greater than the charring temperature of said tri-fluoro-chloro-ethylene for such time as to compress said sheets and effect a permanent adherence therebetween."

"*Claim 22:*

"A plastic-metal laminate comprising: a plurality of copper-foil ribbons; an adherent homogeneous coating of black cupric oxide on two sides of each of said ribbons formed

by oxidation in a chemical bath; and layers of tri-fluoro-chloro-ethylene perform sheets thicker and wider than said ribbons intimately bonded to said cupric oxide to encapsulate said ribbons."

The claims were rejected by the Patent Office as not patentable over a patent to Hurd et al., No. 2,884,161, in view of a patent to Hurd, No. 2,745,898, and a patent to Eisler, No. 2,662,957. The basis for the rejection was that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. 35 U.S.C. § 103.

The Hurd et al. patent No. 2,884,161 discloses a process for bonding sheets of copper to sheets of elastomer by forming a coating of black copper oxide on the copper and joining or bonding the sheets together by the application of heat and pressure. The oxide coating may be formed by immersing the copper in an alkaline solution containing an oxidizing agent such as sodium or potassium chlorite. The copper layer may be encapsulated between two layers of the elastomeric material.

The Hurd patent No. 2,745,898 discloses an encapsulated copper electrical conductor comprised of copper conductors having a black copper oxide film for bonding a resinous insulating sheath thereto. The resinous sheath may be polymerized mono-chloro-trifluoro-ethylene (Kel-F). The copper oxide film may be prepared either by anodic oxidation of the copper in an electrolyte or by chemical oxidation of the copper in an aqueous alkaline solution by a medium such as sodium chlorite.

The Eisler patent No. 2,662,957 discloses laminated "printed circuits" made up of a support sheet layer, a copper foil conductor layer, and an additional electrical component such as a resistor or semi-conductor as an intermediate layer. The patent describes how a "printed circuit" may be formed from a stock three layer laminate by removing unwanted copper foil according to a predetermined pattern by means of a chemical etching process using protective inks.

█ Since the patents to Hurd and Hurd et al. were filed *before,* but issued *after* the filing date of plaintiffs' application, plaintiffs contend the disclosures of these patents do not constitute "prior art" within the meaning of 35 U.S.C. § 103. That exact question was recently presented to this Court in the case of Hazeltine Research, Inc. v. Ladd, D.C., 226 F.Supp. 459 (1964). The decisional and statutory law was thoroughly examined in that case and this Court concluded the disclosures of such patents indeed constitute "prior art", and may be so considered for the purposes of determining obviousness under 35 U.S.C. § 103. The Hurd and Hurd et al. disclosures, therefore, will be applied to plaintiffs' claims in the same manner as they would be applied if they had appeared in printed publications or any other *form generally available to the public.*

It was acknowledged at trial that Hurd et al. disclosed all the essential steps of plaintiffs' process except that of using tri-fluoro-chloro-ethylene (Kel-F) as the specific material to which the copper sheet is bonded. Hurd et al.'s process was devoted to bonding copper to elastomers as a class. The issue before the Court, therefore, was whether it would have been obvious at the time of the invention to one having ordinary skill in the art to substitute Kel-F for one of the elastomers disclosed by Hurd et al. in the Hurd et al. process.

It was to show this obviousness that the Patent Office cited the patent to Hurd, which describes bonding Kel-F to the oxidized surface of a copper conductor. The bonding is accomplished in much the same manner in Hurd as it is in Hurd et al., except that in Hurd the copper is dipped into a solution of the Kel-F, whereas in Hurd et al. the insulating material is applied to the copper in the character of preformed sheets.

It appears to the Court that the teaching in Hurd would lead one skilled in the art to substitute Kel-F for the generically

described elastomer in the process of Hurd et al., since both materials were known in the art at the time the invention was made, and since they both were used for the purpose of insulating copper by being bonded to the surface of the copper following an oxidation treatment.

The plaintiffs contended at trial that because Hurd et al.'s process contemplates vulcanizing the elastomer as it is bonded to the copper sheet, this would lead one skilled in the art *away* from the concept of substituting Kel-F for such an elastomer. In answer to this, it first seems that if an insulating material not requiring vulcanization (such as Kel-F) were to be employed, no vulcanization would be required to occur. Secondly, the language of the claims does not appear to go beyond the heating and pressing of an elastomer in its unvulcanized, and hence thermoplastic, form. Finally, it was not proved at trial that vulcanization was an indispensable prerequisite for Hurd et al. to accomplish his bonding step. In view of these considerations, it does not seem likely that the vulcanization step of Hurd et al. would have discouraged substitution of Kel-F as the insulating material.

The application describes the feature of plaintiffs' invention which consists of making a "printed circuit" by subjecting the copper sheet (or foil) to an etching process. This feature, however, is not set forth in the claims. The claims go no further than specifying a step of "removing excess coated copper to provide a plurality of ribbons of copper". This is not a definition of a "printed circuit". In any event, it is admitted that such processes are old and that a typical one is shown by Eisler.

Another point raised was whether the requirement in the claims that the Kel-F sheets be used in multiple layers, or be thicker than the sheets of copper in contact with them, was of patentable significance. The Court agrees with the holding by the Board of Appeals that neither the thickness nor the number of individual Kel-F sheets is critical, and that the Hurd patent discloses that the thickness of individual sheets may be varied as desired.

Finally, the plaintiffs rely upon allegations and evidence of commercial success. It is well established, however, that commercial success is not persuasive of patentability unless the issue of obviousness is otherwise in doubt. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

For the reasons stated above, the Court, after evaluating the record in the Patent Office, weighing the evidence presented at trial, and reviewing the briefs filed by the parties, cannot say the totality of the evidence carries a "thorough conviction" that the Patent Office has erred. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956). Accordingly, the Court finds for the defendant, and against the plaintiffs, and hereby dismisses the Complaint.

The above Opinion contains Findings of Fact and Conclusions of Law.