**ESSO STANDARD OIL COMPANY,**
Appellant,

v.

**SUN OIL COMPANY et al.,**
Appellees.

No. 12425.

United States Court of Appeals
District of Columbia Circuit

Argued March 3, 1955.

Decided Jan. 19, 1956.

Petition for Rehearing Denied
Feb. 24, 1956.

38

Mr. Francis C. Browne, Washington, D. C., with whom Messrs. William E. Schuyler, Jr., Andrew B. Beveridge and James Atkins, Washington, D. C., were on the brief, for appellant.

Mr. Dos T. Hatfield, Washington, D. C., with whom Mr. Frank S. Busser, Philadelphia, Pa., was on the brief, for appellee Sun Oil Co.

Messrs. E. L. Reynolds, Sol., United States Patent Office, and Clarence W. Moore, Atty., United States Patent Office, entered appearances for Robert C. Watson, Commissioner of Patents, but filed no brief and took no part in the argument.

Before EDGERTON, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This case raises questions concerning the nature and scope of the District Court's power to reject findings of the Patent Office in trademark cases, in the de novo proceedings authorized by Rev. Stat. § 4915.[1]

The contest relates to whether appellee Sun Oil Company is entitled to register "Sunvis" as its trademark, as against the trademark "Univis" previously used and registered by appellant Esso Standard Oil Company. Sun filed its trademark application in 1946, covering lubricating oils with the same descriptive properties as the lubricating oils covered by Esso's earlier trademark registered in 1922. Esso filed its op-

---

1. See Lanham Trade-Mark Act, c. 540, § 21, 60 Stat. 435, later amended by 66 Stat. 814, 15 U.S.C.A. § 1071, and Rev. Stat. § 4915, as amended by 27 Stat. 436 (1893), 44 Stat. 1336 (1927), 45 Stat. 1476 (1929), 53 Stat. 1212 (1939), later amended by 66 Stat. 803, 35 U.S.C. §§ 145, 146 (1952). The Lanham Act extends the right to applicants for registration of marks to "proceed under Section 4915, Revised Statutes, as in the case of applicants for patents, under the same conditions, rules, and procedure as are prescribed in the case of patent appeals or proceedings so far as they are applicable."

position to the registration of Sun's mark and proceedings thereon were held in the Patent Office. On August 1, 1950, the Examiner of Interferences rendered his decision dismissing Esso's notice of opposition and adjudging that Sun was entitled to registration for its mark. He found that both marks covered goods of the same description and that in both marks the syllable "Vis" was an abbreviation of the word "Viscosity," a quality of the product to which the marks were applied. He further found that the syllable "Uni" in Esso's trademark is an abbreviation of "Uniform," reflecting an important quality (uniform viscosity) claimed for Esso's product, and that the syllable "Sun" in Sun's trademark refers to its name. He concluded that, even though the marks differ in composition only as to one letter in the initial portions thereof, the differences in their composition resulted in terms which are "different in appearance and sound, and so entirely different in meaning as to obviate any confusing similarity between them, and enable their concurrent use for the products involved without any reasonable likelihood of confusion in trade." Accordingly, the Examiner of Interferences dismissed Esso's notice of opposition.[2]

Esso appealed to the Commissioner of Patents who, acting through the Examiner-in-Chief, reversed the decision of the Examiner of Interferences. The Examiner-in-Chief found that the "difference in one letter [in the first syllables of the respective marks] was not considered particularly significant insofar as sound and meaning of the prefixes are concerned, since in the particu-

lar combination of letters, the results are terms which are quite different in sound and wholly unlike in meaning. However, the two marks in their entireties are similar in appearance. The latter parts are identical * * * and the prefixes consist of only three letters each, both having the same two letters 'un' in the same order. Similarity in appearance with the identical suffixes is considered sufficient to render the two marks confusingly similar." [3]

Sun thereupon brought this proceeding under Section 4915 of the Revised Statutes, supra note 1, for a de novo determination of its right to registration of the mark "Sunvis." After a trial, the District Court found as a fact that there is "not sufficient similarity in appearance, sound or meaning between the trade-marks 'Sunvis' and 'Univis' when used concurrently on lubricating oils to reasonably cause likelihood of confusion in trade." Accordingly, the court concluded, as a matter of law, that the plaintiff-appellee Sun was entitled to the registration of its mark.

 A finding of fact by the District Court, sitting without a jury, may be set aside on appeal only if it is clearly erroneous. Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A. This broad rule applies to patent and trademark cases under Rev.Stat. § 4915. Besser v. Ooms, 1946, 81 U.S.App.D.C. 7, 154 F.2d 17; Standard Oil Development Co. v. Marzall, 1950, 86 U.S.App.D.C. 210, 181 F.2d 280. The findings are not to be overturned lightly. Larsen v. Marzall, 1952, 90 U.S.App.D.C. 260, 195 F.2d 200. We must inquire, therefore, whether the District Court's findings of fact in this

---

2. In support of his decision the Examiner relied on Miles Laboratories, Inc., v. Foley & Co., 1944, 144 F.2d 888, 32 C.C. P.A.,Patents, 714; Yeasties Products, Inc., v. General Mills, Inc., 1935, 77 F.2d 523, 22 C.C.P.A.,Patents, 1215, and Kensington Steel Co. v. Nichols Engineering & Research Corp., 82 U.S.P.Q. 236 (Com'r of Pat. 1949), in which the marks "Vitamiles" and "Vitabuild," "Yeasties" and "Wheaties," and "Ner-

calloy" and "Oroloy," were held not to be confusingly similar.

3. The Examiner-in-Chief referred without comment to numerous decisions relied on by appellant, holding marks to be confusingly similar and denying them registration, but expressly rejected the applicability of the cases cited by the Examiner of Interferences, *supra*, as the facts in those cases were considered different.

case were "clearly erroneous" under Rule 52(a). In that inquiry, however, we must bear in mind another principle. In patent and trademark cases under Rev.Stat. § 4915 a finding of fact by the Patent Office as to priority of invention or confusing similarity of marks must be accepted as controlling, unless the contrary is established by evidence "which, in character and amount carries thorough conviction." Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657; Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 973; Century Distilling Co. v. Continental Distilling Co., 3 Cir., 1939, 106 F.2d 486, 489; Safeway Stores v. Dunnell, 9 Cir., 1949, 172 F.2d 649, 652–653. As we pointed out in Abbott v. Coe, 1939, 71 App.D.C. 195, 197, 109 F.2d 449, 451, a mere preponderance of the evidence is not sufficient with regard to invention; the Patent Office finding must be accepted if it is "consistent with the evidence," the Patent Office being an expert body pre-eminently qualified to determine questions of this kind. See also Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 1946, 155 F.2d 746, 748–749.

██ Three considerations are relevant on the issue of whether marks have a confusing similarity—appearance, meaning, and sound. McKinnon & Co. v. Hy Vis Oils, Inc., 1937, 88 F.2d 699, 24 C.C.P.A., Patents, 1105. The Patent Office properly considered all three. As already noted, it found on the basis of the evidence before it that the two marks are quite different in sound and meaning but that in their entireties the marks are confusingly similar in appearance, because of their having identical suffixes and three letter prefixes with the same two letters "un" in the same order. We think this conclusion was well warranted on the basis of the similarities noted.[4] Cf. Guggenheim v. Cantrell & Cochrane, 1926, 56 App.D.C. 100, 101, 10 F.2d 895, 896, where we pointed out that "the points of similarity are of greater importance than the points of difference" when a new mark is measured against a well known and established mark. The District Court seems to have disagreed with the Patent Office for only one reason. It found that "No similarity in appearance is found between 'Sunvis' and 'Univis' where the dominant prefix portions of the marks are entirely different in meaning or significance." It thus appears that the District Court based its finding of dissimilarity of appearance entirely on the fact that the marks, or their prefix portions, are dissimilar in meaning. No other reason for its conclusion is suggested in its findings or its informal memorandum. But we think that a difference in meaning is not a sufficient basis to conclude that there is no similarity in appearance— at least in the face of the obvious similarities here. Many words different in meaning may look enough alike to be confusing to the public if used as a mark.[5] It was error to find that there was no similarity in appearance because the prefixes are different in meaning.

Apart from this, we have examined the record before the District Court to ascertain whether there was evidence which could have thoroughly convinced the court that the Patent Office's finding that the similarity in appearance would be confusing was unwarranted. Al-

---

4. Although the evidence indicated that the lubricating oils sold under the trademarks in issue have, until the hearing below, been specialized oils sold to industrial plants and not generally, the Patent Office noted that the registration of Esso's mark and Sun's application for registration of its mark cover lubricating oils broadly. Hence the possibility of confusion to the general public in the future is not eliminated.

5. For example, "Pediglo" and "Pechglo" were held to be confusingly similar in apearance (and sound), although different in meaning, in Vanity Fair Mills v. Pedigree Fabrics, 1947, 161 F.2d 226, 34 C.C.P.A.,Patents, 1043. A similar holding was made in Kenosha Full Fashioned Mills v. Artcraft Hosiery Co., 1947, 161 F.2d 751, 34 C.C.P.A., Patents, 1081, as to "Artcraft" and "Edgecraft."

though the District Court had before it the full record of the Patent Office proceedings consisting of depositions and documents, it also received some new evidence not before the Patent Office. For Sun, an officer of Sun in charge of trademark matters testified that Esso had made no claim that the mark "Sunvis" infringed its trademark "Univis" until three years and ten months after Sun started to use the mark; that he did not know whether Esso or any of its officers had known that the mark "Sunvis" was being used prior to this time; and that he and another officer of Sun had known that Esso had registered and was using the mark "Univis" when their trademark "Sunvis" was adopted. For Esso, an employee of Esso testified that the mark "Univis" has been in continuous use since 1932 at least; that Univis oils are produced in at least fifteen different grades; that these oils are recommended for use for "all applications where unusual or different behaviors in viscosity are required"; that the Sunvis oils are offered for the identical services and, based on Sun's claims for the oils, they are directly competitive; that Sun markets oils for the same purposes under other trademarks: "Suntac," "Solnus," "Circo," and "Lubeway"; and that at least seventeen other companies have registered trademarks (which he enumerated) relating to petroleum products in which the prefix "Sun" is used. Esso Exhibits 1–5, inclusive, in substantiation of this testimony, were identified by the witness and received. In addition, Sun's application to register the mark "Sunvis," a list of third party registered trademarks using as a part thereof the syllable "Vis" (an abbreviation for viscosity) either as prefix or suffix,[6] and a list of Sun's registered trademarks in which the word "Sun" appears, were introduced as Sun's exhibits. Obviously there is nothing in this evidence which would tend to show that the marks "Univis" and "Sunvis" are not confusingly similar in appearance.[7] There was thus no new evidence before the District Court which could have been in any way persuasive upon it to arrive at a different finding from that of the Patent Office's final reviewing officer. We have also examined the record in the Patent Office [8] and cannot say that its finding of confusing similarity in appearance is without substantial support, nor did the District Court base its factual conclusion on such a view.[9]

We find no basis, therefore, for the action of the trial court in overturn-

6. This exhibit was received, over the objection of Esso, for the limited purpose of showing that the prefixes "Uni" and "Sun" were the dominant parts of the trademarks here involved. In the admission of the exhibit for this purpose we find no error. Miles Laboratories, Inc., v. Foley & Co., 1944, 144 F.2d 888, 890, 32 C.C.P.A.,Patents, 714; Kraft Walker Cheese Co. v. Kingsland, D.C.D.C.1947, 75 F.Supp. 105. See Yeasties Products, Inc., v. General Mills, Inc., supra, as to weight to be given the several like and dissimilar syllables of a mark.

7. Some of the evidence tends to refute Sun's claim that the prefix "Sun" is so closely associated with the name Sun Oil Company that any chance of confusion is thereby obviated.

8. Most of the evidence there was directed to the problem of whether the two marks related to similar and competing products, a question not before us. One witness (the general manager of Sun) testified by deposition that he had never known of any confusion between the two marks, and that in his opinion confusion was not possible, because Sun had used the word "Sun" in other brand names of its products since the 1920's. We do not regard this testimony as thoroughly convincing that confusion in the future was impossible in the face of the obvious similarities in appearance.

9. No issue as to credibility of witnesses is presented in this case. As already indicated, the testimony in the District Court did not relate to the issue presented to us and thus is not here relevant. The testimony of the witness in the Patent Office proceedings, given by deposition and outlined in the preceding footnote, is accepted as credible but insufficient to establish that the Patent Office's finding should be rejected.

ing the ruling of the Patent Office. Certainly there was no evidence to the contrary which "carries thorough conviction," as the Supreme Court has told us there must be. Morgan v. Daniels, supra. The evidence before the District Court was the same as that before the Patent Office, except for certain additional evidence "not of a kind to change the result." Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 973; see also Sanford v. Kepner, 3 Cir., 1952, 195 F.2d 387. In such a case, the Patent Office ruling should normally be followed. Of course, if the decision of the Patent Office is not warranted on the evidence before it, or if the new evidence reaches the necessary standard, the District Court may rule as the totality of the evidence may require. But the present is not such a case.

■ It may perhaps be suggested that the District Judge, after consideration of all the evidence, was entitled to rule that in his own independent judgment there was no likelihood of confusion, and that his determination should prevail unless upon appeal the reviewing court takes a different view and substitutes *its* own independent judgment about the matter. Such a rule would, we think, be quite unworkable, would create confusion, discrimination and uncertainty, and would be outside the permissible scope of judicial review of administrative action—even where, as here, Congress has authorized an action de novo to review the administrative ruling. Where the decision of the Patent Office has a substantial basis in fact, and where the new evidence offered to the trial court is not sufficient to shift the balance (i. e., is not enough to produce "thorough conviction" to the contrary), the courts are simply not authorized to substitute their own views.

For a judge to conclude that he himself would not be confused by two competing trademarks—and hence that the public would not be confused—is beside the point: the question is whether the expert agency charged with responsibility in the matter has in view of all the evidence clearly erred in finding that the possibility of confusion exists.

■ Finally, we think it well to emphasize that we are dealing here with an effort to obtain registration under the Federal statute: that is, with an effort to obtain a statutory privilege grantable by an administrative agency. We are not dealing with a suit to obtain damages for infringement of a registered mark or for unfair competition: different considerations are there presented. In suits of the instant sort the courts should not lightly overturn the ruling of the Patent Office when its findings, as here, are in accord with the settled rule that "the newcomer will be refused registration should there exist any doubt as to the probability of confusion between the two marks. In other words, any doubt will be resolved against the newcomer." Derenberg, Trade-Mark Protection and Unfair Trading 537 (1936), citing E–Z Waist Co. v. Reliance Mfg. Co., 1923, 52 App. D.C. 291, 286 F. 461, 464. As we said in the case just cited: "The reason for this is that the field from which a person may select a trade-mark is practically unlimited and hence there is no excuse for his impinging upon, or even closely approaching the mark of his business rival." See also Guggenheim v. Cantrell & Cochrane, 1926, 56 App.D.C. 100, 10 F.2d 895.

For these reasons, the judgment of the District Court is

Reversed and the complaint herein ordered dismissed.