Bennie F. DIRZIUS, Plaintiff,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 2979-62.

United States District Court
District of Columbia.

May 19, 1964.

Rupert J. Brady, Washington, D. C., James R. McKnight, Chicago, Ill., for plaintiff.

Clarence W. Moore, Solicitor, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was instituted pursuant to 35 U.S.C. § 145 seeking judgment authorizing the defendant, Commissioner of Patents, to issue Letters Patent of the United States on an application Serial No. 725,599 entitled "High Speed Drilling Attachment" filed April 1, 1958, by Bennie F. Dirzius, plaintiff.

The invention described in the application relates to an attachment adapted to be fastened to a conventional drill press, the attachment being designed to increase the speed of the drill and enable it to be used for making small round holes in a wide range of applications. The attachment consists mainly of a housing containing a gear train which, by reason of the diameters of the gears involved, increases the ordinary speed of the drill spindle by a factor of four.

The plaintiff seeks to gain patent protection for two specific features of the attachment. The first is an improved bearing arrangement in which one roller bearing cooperating with a fixed button, used in a patent previously granted to plaintiff, is replaced by two roller bearings. A second feature for which it is sought to gain protection is the substitution of removable shims in place of set screws, which were also used in the plaintiff's prior patent.

Claims 5 and 8 of the application are the only claims at issue, and they read as follows:

5. A high speed attachment for a conventional drill press having a chuck comprising a driving spindle adapted for removable engagement at its upper end with the chuck of the conventional drill press, said spindle having a bottom rounded flange, a pair of spaced planetary gears rotatably attached to the under surface of said flange, a housing having an open top, a large stationary internal gear positioned within said housing, a chuck shaft rotatably mounted and extending through the bottom of said housing, a pinion gear mounted on said chuck shaft, a chuck attached to the lower end of said chuck shaft and adapted removably to receive a drill, a cap having circumferential screw threads, said housing having coacting circumferential screw threads, a plurality of shims of desired thicknesses, the bottom shim positioned on top of said stationary internal gear, said cap adapted to be moved on said housing on said coacting screw threads to move said cap threadwise against the top shim so that the bottom shim bears against said stationary internal gear and maintains it in seated position, and prevents end play in said chuck shaft, said cap having a central opening, said driving spindle extending through the central opening in said cap, said driving spindle having an internal wall defining a hollowed out portion, a plug and therebelow a bushing attached to said wall, a hardened steel ball centrally supported within a hollowed out portion on the upper end of said bushing, the upper portion of said chuck shaft on the same axis as the hollowed out portion and extending up into and rotatable within the hollowed out portion and having a central recess within its upper portion, a steel and thrust ball rotatable within said recess and bearing centrally against said hardened steel ball thereabove, said planetary gears engaging said internal gear and also said pinion gear for moving the pinion gear, and its chuck shaft and drill attached a multiplied number of times faster than the R.P.M. of said driving spindle, for the efficient drilling of small holes at a minimum of expense.

8. In a high speed drilling attachment, a drive shaft having a central

vertical opening therethrough, a chuck shaft on the same vertical axis as said drive shaft and extending upwardly and rotatable within the opening of said drive shaft, said chuck shaft having a centrally located recess in its top portion, a bushing attached to said drive shaft and extending within its opening, said bushing having on its upper end a centrally located hollowed out portion, a single hardened steel ball rotatably mounted in the hollowed out portion of said bushing and centrally positioned within the opening of said drive shaft, a single smaller steel end thrust ball positioned below said hardened steel ball and centrally and rotatably mounted in the recess in the top portion of said chuck shaft and within the opening of said drive shaft, said smaller steel end thrust ball and said hardened steel ball on the same vertical axis and contacting centrally in their rotation.

Claim 8 was rejected by the Patent Office as unpatentable over a prior patent granted to plaintiff, No. 2,826,095, in view of a patent to Weber, No. 1,506,796. Claim 5 was rejected as not patentable over the references used against claim 8 in further view of a patent to Miller, No. 1,444,628. The Examiner in the Patent Office also cited a patent to Johnson, No. 1,800,942, and a patent to Snyder, No. 1,355,706.

Plaintiff's patent No. 2,826,095 discloses a high speed drilling attachment which is similar in all respects to that claimed in his present application except for the provision of the steel ball in place of a thrust button and of the shims instead of set screws.

The Weber patent No. 1,506,796 discloses and claims a thrust bearing comprised of two roller bearings not in axial alignment. This patent also indicates, however, that prior to its disclosure it was common in the part to position two roller bearings in axial alignment to serve as a thrust bearing.

The patent to Miller, No. 1,444,628, shows a method of taking up wear in bearings by means of removable shims.

The Johnson patent, No. 1,800,942, shows a plurality of shims held together so that the shims may be readily detached so as to reduce the total thickness of the shim assembly. This patent also discloses that the shims may be used to take up wear in bearings to adjust the spacing of gears or housings, and for other purposes known in the art.

The Snyder patent, No. 1,355,706, discloses the use of a plurality of shims for the purpose of taking up wear in face plates which originally fill a space between the ends of a bearing assembly and the flanges of a crankshaft so that the crankshaft is supported and held against axial movement.

The plaintiff's contentions are essentially two: the first is that the use of two roller bearings instead of one roller bearing and a thrust button is unobvious and produces a superior result; the second is that to use a plurality of shims instead of a plurality of set screws is also unobvious and produces a superior result.

At trial it was demonstrated by the evidence that the patent to Weber undeniably disclosed that the use of two roller bearings in axial alignment to provide a thrust bearing is quite old in the art. In fact the patent to Weber was apparently conceived for the purpose of overcoming the disadvantages of such a construction. Weber states in his disclosure that when roller bearings are axially aligned, wear produces flat spots which defeat the efficiency of the bearing services.

It seems to the Court that a person skilled in the art, when desiring to modify the roller bearing and thrust button construction of plaintiff's earlier patent, could merely look to Weber and be taught to substitute a two roller-bearing construction, and that if he did so he would achieve a superior result. Both patents are common to the machine tool art, and

both would be within the knowledge of anyone familiar with it.

It was also shown at trial that shims have been for many years a conventional way of taking up wear in bearings and supporting shafts against undesired axial movement. The patents to Johnson, Miller and Snyder conclusively bear this out.

Johnson's patent, granted in 1931, states in its first paragraph "as is well known in the art, shims are used to provide for taking up wear in bearings, to adjust the spacing of gears or housings, and in a variety of other applications". Miller discloses a shim (19) which is used to adjust the distances between two bearing means in a manner directly dependent upon the size of a ball, and also shows a set of removable shims (12) which surround a cylindrical spindle to serve the same function as do the shims claimed by the plaintiff. Snyder also discloses a set of removable shims (26) which take up wear and prevent undesired movement of a cylindrical shaft around which the shims are positioned.

The Court is not convinced the Patent Office erred in holding that this substitution would be obvious to a mechanic skilled in the art.

The plaintiff has contended that even though his claimed device consists wholly of old elements, it nevertheless constitutes a new combination. To substantiate this he has cited Levin v. Coe, 76 U.S.App.D.C. 347, 132 F.2d 589 (1942) in which it was held that "the fact that all of the elements entering into a combination are old does not necessarily negative the existence of invention."

■ It should be pointed out, however, that it is also necessary that the "utilization of old elements in combination must represent exercise of inventive skill and creative talent beyond that of ordinary designer chargeable with knowledge of prior art". Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2nd Cir. 1961).

The basic functions of all the parts of the present application appear to be disclosed in the plaintiff's prior patent. The only thing not disclosed by the plaintiff's prior patent is the improved result accomplished by substituting a different set of known elements for the known elements of the prior patent. This result is not achieved, however, because the substituted elements perform a new function, but only because they perform the same function as the old elements in a more efficient manner.

■ The evidence at trial showed this substitution to be a conventional one in the design of machine tools. It additionally demonstrated that the superior results arising from the exchange of these parts is well known, and in fact would have been expected by any person skilled in the art who desired to make the substitution. So, while the result is in fact superior, it is by no means unobvious, and hence cannot be deemed invention within the meaning of 35 U.S.C. § 103.

■ Although the plaintiff introduced evidence of commercial success, such cannot turn the decision in favor of patentability in cases where invention is clearly lacking. Union Metal Mfg. Co., et al. v. Ooms, 81 U.S.App.D.C. 76, 154 F.2d 857, cert. denied, 329 U.S. 726,. 67 S.Ct. 78, 91 L.Ed. 629 (1946).

■ After duly considering the record in the Patent Office, the testimony presented at trial, and the briefs of the parties, it is the opinion of the Court that the totality of the evidence does not carry a "thorough conviction" that the Patent Office has erred. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956).

The Court accordingly finds for the defendant, and against the plaintiff, and hereby dismisses the Complaint.

The above Opinion contains Findings of Fact and Conclusions of Law.