Crawford B. MURTON, and Vesuvius
Crucible Company, Plaintiffs,

v.

David L. LADD, Commissioner of
Patents, Defendant.

Civ. A. No. 3876–62.

United States District Court
District of Columbia.

June 25, 1964.

Edward Hoopes, III, Blenko, Hoopes,
Leonard & Buell, Pittsburgh, Pa., Spencer B. Michael, Smith, Michael & Gardiner, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., U. S. Patent
Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking judgment of this Court authorizing defendant, Commissioner of Patents, to issue Letters Patent of the United States containing claims 2, 5, 7, 9, 12, and 13 [1] of an application Serial No. 759,670 entitled "Stopper for a Ladle or Similar Receptacle" filed September 8, 1958, by plaintiff, Crawford B. Murton, and assigned to plaintiff, Vesuvius Crucible Company. Claim 8 was allowed.

The invention described in the application relates to an improvement in a stopper used to halt the flow of molten steel from an aperture in the bottom of a pouring ladle. The plaintiffs' device is comprised of four basic components. It has a long cylindrical steel rod with a flange at its bottom end, a refractory stopper head surrounding the flange with an aperture at its center within which the flange is positioned, a refractory insert which rests upon the upper face of the flanged bottom of the rod and prevents the rod from being withdrawn

1. Claim 13 was presented through inadvertence to the Examiner in a form dependent upon Claim 11, which previously had been cancelled. The parties, by stipulation, agreed to present Claim 13 in independent form for adjudication.

from the stopper head, and a column of refractory sleeves surrounding the rod and extending above the stopper head to protect the rod from the heat of the molten steel.

The claims read as follows:

"2. A stopper for a ladle or similar receptacle comprising a refractory head having a well extending downwardly thereinto, a rod having a lateral projection at its bottom inserted downwardly into the well and means separate from the head also inserted downwardly into the well above the lateral projection at the bottom of the rod into position to overlie at least a portion of the lateral projection at the bottom of the rod and thereby block withdrawal of the rod from the well and connected with the head whereby to attach the rod to the head, said means being the sole means overlying the lateral projection at the bottom of the rod.

"5. A stopper for a ladle or similar receptacle comprising a refractory head having a well extending downwardly thereinto, the well having a portion of its wall relatively remote from its bottom of smaller transverse dimension than a portion of its wall less remote from its bottom, forming a shoulder facing toward the bottom of the well, a rod having a lateral projection at its bottom inserted downwardly into the well and means separate from the head inserted downwardly into the well upon insertion of the rod interposed between said shoulder and the lateral projection at the bottom of the rod blocking withdrawal of the rod from the well whereby to attach the rod to the head.

"7. A stopper for a ladle or similar receptacle comprising a refrac-tory head having a well extending downwardly thereinto, a rod having a lateral projection at its bottom inserted downwardly into the well and cooperating preformed elements fitting together to at least largely surround the rod above the lateral projection thereon applied to the head into position to overlie at least a portion of the lateral projection at the bottom of the rod and thereby block withdrawal of the rod from the well whereby to attach the rod to the head.

"9. A stopper for a ladle or similar receptacle comprising a refractory head having a well extending downwardly thereinto, the well having at a portion of its periphery a shoulder facing toward the bottom of the well, a rod having a lateral projection at its bottom inserted downwardly into the well and means separate from the head also inserted downwardly into the well into position to overlie at least a portion of the lateral projection at the bottom of the rod and turned to a position in which a part thereof underlies said shoulder to block withdrawal of the rod from the well and thereby attach the rod to the head.

"12. Means for application to a ladle stopper rod having a lateral projection at its bottom to form a ladle stopper, said means comprising a refractory head having a well extending downwardly thereinto having a downwardly facing shoulder and means separate from the head applied to the head and rod downwardly through said well into position to underlie at least a portion of said shoulder and overlie at least a portion of the lateral projection at the bottom of the rod and thereby

block withdrawal of the rod from the well whereby to attach the rod to the head.

"13. Means for application to a ladle stopper rod having a lateral projection at its bottom to form a ladle stopper, said means comprising a refractory head having a well extending downwardly thereinto, means separate from the head applied to the head and rod downwardly through said well into position to overlie at least a portion of the lateral projection at the bottom of the rod and thereby block withdrawal of the rod upwardly out of the well whereby to attach the rod to the head and additional means holding the head and said first mentioned means against substantial relative movement to insure maintaining the rod attached to the head."

The Examiner in the Patent Office rejected the claims at issue as not patentable over any one of three cited references, taken individually. The references are a United States patent to Sears, No. 1,-843,175, a United States patent to Bacon, No. 1,719,795, and a British patent to Williams, No. 12,291 (1904). The Examiner does not state whether his rejection is based upon 35 U.S.C. § 102, or upon 35 U.S.C. § 103.

The British patent to Williams discloses a ladle stopper in which the refractory head has an irregularly shaped eccentric well (aperture) with a horizontal shoulder above an enlarged lower portion on the side nearest the head axis. The stopper rod has a concentric circular end flange of such diameter that the rod and flange can be inserted downwardly into the well and then shifted laterally to locate part of the flange under the shoulder. An insert filling the remainder of the well is then inserted to lock the flange in position under the shoulder. Alternatively, the locking block may be dispensed with and its space filled with cemented refractory material, making in effect a one-piece refractory stopper head of the type admitted by plaintiffs to be old in the art.

The Bacon patent discloses a bayonet-joint headed ladle stopper consisting of a rod having diametrically opposite projections near its lower end, a refractory head, and a column of refractory sleeves surrounding the rod and bearing upon the head. The refractory head has an aperture (well) in its center with metal channel inserts located within cavities in the aperture's walls. The diametrically opposite projections of the stopper rod fit into the cavities so the rod and its projection can be inserted downwardly into the aperture and then rotated to position the projections in the channel inserts and lock the head to the rod.

The Sears patent discloses a refractory head having an aperture (well) in its center with a lower cylindrical portion of relatively large diameter and an upper portion of rectangular cross-section. The large dimension of the rectangular cross-section is smaller than the diameter of the lower portion. The stopper rod at its lower end has a rectangular flange which fits quite closely in the upper rectangular portion of the aperture but passes downwardly therethrough. During the molding of the head, a round, table-like, 4-legged structure is located within the lower cylindrical portion of the well. That structure has a circular flat top which contains a rectangular opening for receiving the rectangular stopper rod flange. On the lower side of the flat top there are shallow rectangular recesses located centrally along the sides of the rectangular opening so the rectangular rod flange, after it has passed through the opening, can be turned 90° and locked in those recesses. The patent also discloses a column of refractory sleeves above the stopper head and surrounding the rod.

The Examiner, in his Answer, listed each of the elements shown by the references that he felt were patentably equivalent to the elements claimed by the

*plaintiffs.* He described the reference to Bacon as follows:

> "The patent to Bacon shows and discloses a stopper rod assembly for a ladle comprising a refractory head (5) having a well extending downwardly thereinto, a rod (1) having a lateral projection (2) at its bottom and means (9) separate from the said head and *adapted* to be inserted downwardly into the well and above the said lateral projection on the rod to thus prevent withdrawal of the rod and thereby to attach said rod to said head. It is noted that Bacon provides recessed portions (7) and slots (8) which forms a shoulder facing toward the bottom of the well and adapted to receive separate means (9) within the well."

A similar treatment was accorded the patents to Sears and Williams:

> "The patent to Sears shows and discloses a stopper assembly comprising a refractory head (20), having a well (27), a rod (33) having a lateral projection (34) at its bottom and means (29) separate from the head and adapted to be inserted downwardly into said well. The said means (29) fit within the well and under the shoulder portion of the head to thus secure the rod to the head by engaging the projection (34) of the rod within the recessed portion (31) of the means."

> "The British Patent shows a stopper assembly comprising a refractory head (D) including a downwardly extending well portion (B), a rod (E) including a flange portion that extends downwardly into said well and under a shoulder formed with-in the well and means (B²) separate from the head *inserted* downwardly into the well and above the lateral projection of the rod to thus prevent withdrawal of the rod to thereby attach the rod to the head. It is noted that the wall defining the well has a portion remote from the bottom of the well of smaller transverse dimension, thus providing a shoulder which extends over the lateral projection of the rod when the latter is inserted into said well. Note the specific language of the patent wherein the locking block (B²) '* * * automatically locks the ladle rod * * *' within the well thus securing the rod to the head portion."

The Board of Appeals did not take the same approach as did the Examiner. The Board, when applying the references to the claims, suggested that plate 29 of Sears could be removed from his device without the exercise of invention, and likewise suggested that the metallic segments 9 of Bacon could be entirely eliminated from Bacon's disclosure. The Board further stated that the member 34 of Sears could be connected to Sears' tie rod 33 by means of a mating countersink arrangement, and that the locking pin 2 of Bacon could be secured to Bacon's rod 1 in a manner similar to that shown by Sears. All these modifications in the references, the Board held, would be within the skill of persons ordinarily skilled in the art.

The Patent Office, in its brief before the Court, does not appear to rely upon either the theory propounded by the Examiner or the different theory propounded by the Board. Instead, the Patent Office, before the Court, has directed its efforts to showing the claims at issue are so broad as to violate the requirements of 35 U.S.C. § 112.

■ The Court must admit that it is somewhat disappointed by the divergence of approach manifested by the Patent Office in this case. It is confronted with the problem of selecting one, or indeed none, of three disparate propositions. Whether the "presumption of correctness" normally accorded to Patent Office adjudications [2] is wholly rebutted

---

2. Esso Standard Oil Company v. Sun Oil Company, 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956), Abbott et al. v. Coe, 71 U.S.App.D.C. 195, 197–198, 109 F.2d 449, 451–452 (1939).

by such circumstances, the Court does not decide. It should be obvious, however, that it is at least severely weakened.

The plaintiffs relied before the Court and in their brief primarily upon a superior function of their device. Considerable testimony and argument was devoted to showing the advantage of having the refractory sleeves (which are positioned above the stopper head) bear on the surface of the insert rather than the surface of the stopper head. The advantage accruing from such a construction was said to be the removal of stress from the narrow side walls of the stopper head, thus reducing the likelihood of failure of the stopper head during its performance.

This advantageous construction, however, does not appear to be directly set forth in the specification, and is certainly not recited by the claims. In view of this, the extensive arguments on this point may only be accorded slight probative weight.

 The Court, after thoroughly reviewing all three different contentions of the Patent Office, has determined that the analysis by the Examiner in his Answer was correct.

As the Examiner stated, each element claimed by the plaintiffs appears to be present in the reference to Sears, and also in the reference to Bacon. The plaintiffs strenuously argued that the plate 29 of Sears is not "inserted downwardly into the well" as required by the claims. They recognize, however, that the Bacon patent "is silent as to whether the metal * * * inserts (9) are molded into the head (5) when the head is formed, or whether the inserts are put in place after the head is formed * * * "

The Court agrees with the Examiner's position that since the claims are limited to the *structure* of the stopper head assembly, the manner in which the parts are put together is not of great patentable significance. Insofar, however, as a "means plus function" recitation does define structural characteristics of the device's components, such functional recitations must be given effect. In this instance, however, the functional recitations do not seem comprehensive enough to distinguish structurally from the references in a manner unobvious to persons having ordinary skill in the art. It appears to the Court that either the plate (29) or the opening (28) in Sears could easily be fashioned, if it were desired to do so, so that the plate could be inserted downwardly through the opening into the well. To merely do this would not appear to rise to the level of invention. In any event, it is admitted that the elements 9 of Bacon can be inserted downwardly through the well opening and into position above the upper face of the protuberance (2) at the bottom of the rod. This seems sufficient to meet the broad requirements of the claims.

An additional assertion by the plaintiffs was that their feature of making the insertion out of "preformed elements fitting together to at least largely surround the rod" patentably distinguishes from the references. The Court agrees with the Board, however, in its holding that "the use of split bushings to facilitate the assembly to a rod is a common mechanical expedient".

The British reference to Williams was used by the Examiner to meet some of the broader of the plaintiffs' claims. The Court generally agrees with this interpretation of the British patent. It does seem, however, that this reference might be avoided with respect to Claim 2 by that claim's requirement that the insert be the "sole means overlying the lateral projection at the bottom of the rod".

Finally, the plaintiffs rely upon proof of commercial success to show unobviousness. The Court is not convinced, however, that the commercial success the plaintiffs have enjoyed can be attributed to the claims before the Court. The feature which has produced the commercial success is apparently the manner in which the refractory sleeves rest upon the stopper head assembly. Since the claims do not require that the sleeves rest upon the insert, the commercial suc-

cess arising from such a construction cannot be given weight in determining obviousness. In any event, commercial success is persuasive of unobviousness only in instances where that question is otherwise in doubt. Union Metal Mfg. Co. et al. v. Ooms, 81 U.S.App.D.C. 76, 154 F.2d 857 (1946). The Court here considers the references to so clearly teach all material aspects of the subject matter claimed that obviousness cannot be said to be otherwise in doubt.

After considering the record in the Patent Office, the proceedings at trial, and the briefs of the parties, it is the opinion of the Court that the totality of the evidence requires a finding for the defendant and against the plaintiffs. The Complaint, accordingly, will be dismissed.

The above Opinion contains Findings of Fact and Conclusions of Law.