Ernest R. BIGGS, Jr., and Ray Arganbright, Plaintiffs,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 69-63.

United States District Court
District of Columbia.

July 1, 1964.

Martin T. Fisher, Fisher, Christen, Sabol & Caldwell, Washington, D. C., Herbert C. Brinkman, Jr., Wood, Herron & Evans, Cincinnati, Ohio, for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking judgment of this Court authorizing defendant, Commissioner of Patents, to issue Letters Patent of the United States containing claims 10, 11, 12, 13, 17 and 18 of an application Serial No. 694,647 entitled "Therapeutic Training Spat" filed November 5, 1957, by the plaintiffs. Claims 10, 11, 12 and 18 were withdrawn by plaintiffs at trial, leaving only claims 13 and 17 for adjudication.

The invention described in the application relates to gaiters or spats for the therapeutic treatment of muscles in the hips, legs, ankles, and feet. The preferred form of the spat consists of a spat body having containers on each side, each of which is divided into a plurality of tube-like pockets for carrying weights, preferably in the form of lead bars. Superior training results apparently can be obtained when each leg of the trainee is forced to work against a spat attached to the ankle containing a total weight not exceeding three pounds. The spat body has a series of eyelets through which a lace is threaded for the purpose of draw-ing the body snugly and comfortably around the leg, ankle and foot of the wearer. The spat is held down upon the wearer's foot and ankle by a restraining strap which extends under the arch.

The claims at issue read as follows:

*Claim 13.*

"A therapeutic training device for training and developing muscles and joints in and below the hip of a human being, said device including a body; fastening means for holding the body down upon the foot and shoe of the wearer; means for securing the body snugly about the ankle of the wearer; container means on said body; means dividing said container means into sections, weight means in one of said sections, and a single means for closing said container and all of said sections."

*Claim 17.*

"A therapeutic training device for training and developing muscles and joints in and below the hip of a human being, said device including a body; strap means adapted to extend under the foot of the wearer for holding the body down upon the foot of the wearer; lacing means on the front of said body for securing the body snugly about the ankle of the wearer; flap means beneath said lacing means for protecting the wearer from said laces; a pair of container means, one on each side of said body for receiving weights; weight means in said containers, and means for retaining said weight means in said containers."

Claim 13 was rejected by the Examiner in the Patent Office as not patentable over a British patent to Martin, No. 572 of 1890, in view of a United States patent to Waller, No. 2,241,833. Claim 17 was rejected as not patentable over the British patent in view of Waller alone, or in further view of a United States patent to Venables, No. 2,114,790. The Examiner does not state whether his rejection is based upon 35 U.S.C. § 102 or 35 U.S.C. § 103.

Both of those rejections were affirmed by the Patent Office Board of Appeals, which adopted the Examiner's conclusions as its own.

The British patent discloses gaiters, anklets, leggings, boots, and shoes having a variety of pockets for carrying coins.

The Waller patent discloses an exercising device consisting of two sheets of leather laced above and around the ankle or wrist of the wearer, each sheet having pockets of elastic material for carrying a plurality of bar weights of approximately one-half pound each.

The Venables patent discloses an exercising device comprising a metal boot of substantial weight fastened about the foot and ankle of the wearer by straps.

Since the Patent Office rejected claim 13 as not patentable over the British patent to Martin alone, it is necessary to consider the extent to which the individual elements recited by claim 13 are revealed therein. The patent shows a body (member $a$), fastening means (member $c^2$) for holding the body down upon the foot and shoe of the wearer, means (member $b$) for securing the body snugly about the ankle of the wearer, and container means (member $d$) mounted on the body. The concept of dividing the container into sections does not appear in the embodiment of the invention which is designed to fit the wearer's ankle and foot. Other embodiments, however, do disclose this concept. In Figure 4 of Martin's drawings the container is divided into three separate compartments (or sections), and weights (coins) can be placed in each compartment. Finally, a "single means" is depicted in Figure 4 in the form of a flap (member $a^5$) for closing the container and all of its sections. Thus it appears that each structural element recited by claim 13 is described by Martin.

■ In view of this, argument has been devoted to showing that the preamble of the claim—which specifies the device is to be used for "training and developing muscles"—serves to place the elements of the claim in a context patentably distinct from that of Martin. The basis for this argument is that Martin's spat is used only for carrying money and not, intentionally at least, for "training and developing muscles". It is the opinion of the Court, however, that since all the elements recited are found in Martin, and since Martin's spat when filled with money would inherently tend to exercise muscles in the same way as would the training device, no real merit resides in such an argument.

In claim 17 the same general device is described, except that "strap means" are set forth for passing beneath the arch of the wearer and holding the spat body down upon the foot, and "lacing means" are required for securing the spat body about the ankle. Neither of these elements are found in Martin's patent. "Lacing means" are shown by Waller, however, and are used to secure a training device very similar to the plaintiffs' to the calf or forearm. "Strap means" are shown by the patent to Venables for holding a weighted training device to the foot and ankle. The issue to be decided in this connection is whether it would be obvious to a person having ordinary skill in the art to modify the spat of Martin to incorporate the laces of Waller and the straps of Venables. 35 U.S.C. § 103.

■ Since laces are a common way of securing apparel to the ankle of a wearer, and straps extending beneath the arch are conventional instruments for holding apparel down upon a wearer's foot, the incorporation of either of these concepts in the device of Martin does not seem to the Court to go beyond that which would be "obvious" within the meaning of 35 U.S.C. § 103. On questions of this nature, the Court is bound to observe the presumption of correctness that attaches to determinations of patentability by the experts in the Patent Office. Decisions by the latter will not be overturned unless there be a "thorough conviction" that the evidence compels an opposite result. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956).

■ Although commercial success was demonstrated by the plaintiffs at trial, it cannot be deemed persuasive unless the issue of obviousness is otherwise in doubt. Great Altantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 349, 95 L.Ed. 162, 87 U.S.P.Q. 303 (1950).

■ The Court, after considering the record in the Patent Office, the proceedings at trial, and the briefs of the parties, cannot say the Patent Office has erred. Accordingly, the Court finds for the defendant and against the plaintiffs, and hereby dismisses the Complaint.

The above Opinion contains Findings of Fact and Conclusions of Law.