**MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Plaintiff,**

v.

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 3392-62.**

United States District Court
District of Columbia.

July 9, 1964.

ly described by the language of claim 1, which reads as follows:

"1. A method of making acylaminopenicillanic acids of the formula

wherein R is an organic acid radical which comprises subjecting aminopenicillanic acid of the formula

$$H_2H—CH—CH \overset{S}{\diagdown} C(CH_3)_2$$
$$C—N—CHCOOH$$
$$\overset{\parallel}{O}$$

to the action of an organic acid acylating agent."

Six additional claims were presented for adjudication, each of them setting forth with more particularity the character of the acid radical R, and also the character of organic acid acylating agent.

The Examiner rejected all the claims (1 through 7) as obvious in view of the disclosures of two printed publications, an article in 1953 by Kato,[3] and a "Letter to the Editors" in 1949 by Hockenhull et al.[4] The claims were also rejected for failing to conform to the requirement of 35 U.S.C. § 112 that they particularly point out and distinctly claim the subject matter which the plaintiff regards as its invention.

Harold T. Stowell, Washington, D. C., Roger T. McLean, N. Dale Sayre, McLean & Boustead, New York City, for plaintiff.

Joseph Schimmel, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking judgment of this Court authorizing the defendant, Commissioner of Patents, to issue Letters Patent of the United States on an application Serial No. 810,231 entitled "Production of Penicillins", filed May 1, 1959,[1] by John C. Sheehan and assigned to the plaintiff.[2]

The invention described in the application relates to a method for producing penicillins by chemical synthesis. The method consists of the single step of subjecting 6–aminopenicillanic acid (hereinafter referred to as 6–APA) to the action of an organic acid acylating agent. The reaction process is adequate-

1. The application at bar is a continuation-in-part of application Serial No. 643,260, filed March 1, 1957. The patentability of the subject matter involved is determined in accordance with the conditions existing at the earlier date.

2. Massachusetts Institute of Technology was substituted December 23, 1962 for the original plaintiff, Research Corpora-

tion, as a result of a written assignment of all rights in the application by the latter to the former. The assignment was executed March 25, 1963, and was recorded in the United States Patent Office on August 20, 1963.

3. The Journal of Antibiotics, Vol. VI, No. 3. pp. 130–135.

4. Arch. Biochem, Vol. 23, pp. 160–161.

The Patent Office Board of Appeals unqualifiedly affirmed the Examiner's rejection of the claims on the ground of obviousness, but reversed the Examiner as to the rejection under 35 U.S.C. § 112 insofar as the terms "a phenoxy-lower-alkanoic acid acylating agent", "a phenoxy-lower-alkanoyl halid", and "comprises subjecting" were held by the Examiner not to comply with that section's provisions.

Before the Court, the Solicitor followed the position of the Board and the Examiner on the issue of obviousness, but conceded that additional evidence introduced by the plaintiff overcame the rejection under 35 U.S.C. § 112, at least insofar as broadness of the claims was concerned.

Since the Patent Office rejection is predicated upon the language of 35 U.S. C. § 103, the issue here to be determined is the extent to which the plaintiff's process "would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *." More particularly, the crux of the matter is whether the references cited by the Patent Office contain subject matter which would have led a skilled chemist in March 1957 to have conceived of the process of synthesizing penicillin in the manner which the plaintiff has disclosed.

Since most of the argumentation before the Court has been devoted to interpreting the nature of the subject matter the references contain, it will be necessary for the Court to examine them in some detail.

The Kato article relates to biological experiments in penicillin production and postulates the occurrence in fermentation broths of a substance termed "penicillin-nucleus". It states that this substance occurs in the absence in the broth of any precursor (e. g. phenylacetic acid) for the R group of the penicillin molecule, and that the addition of phenylacetic acid to the broth suppresses occurrence of the substance and results in increased production of penicillin, "indicating a direct interconversion of them ("penicillin nucleus" and phenylacetic acid) within the mold cells". The Examiner, and presumably the Board and the Solicitor, contended that "penicillin-nucleus" is analogous to, if not the same as "6–APA", and that the addition of phenylacetic acid is analogous to, if not the same as, the step of plaintiff's claims which prescribe "subjecting aminopenicillanic acid * * * to the action of an organic acylating agent."

The Hockenhull publication is a conjecture on the possible precursors of penicillin in its biosynthesis. It states that unpublished experiments by one of the authors indicate that an acylation process by carboxylic acid takes place after the synthesis of a "dicyclic portion" of penicillin "associated with the cell-substance of the mold". As the Patent Office pointed out, Hockenhull sets forth a formula for natural penicillin showing the presence of an acylated amino group. This formula is the same as that of the penicillin produced by the plaintiff according to claim 1. Additionally, Hockenhull postulates that "experiments * * indicate that the acylation process * * takes place after the synthesis of the dicyclic portion, which latter appears to be associated with the cell substance of the mold." The Patent Office interprets this reference to show an acylating process analogous to, if not the same as, the "action of an organic acylating agent" of plaintiff's claim 1, and interprets the "dicyclic structure" to be analogous to, if not the same as, the "6–APA" of plaintiff's claim 1.

After meticulously examining the evidence bearing on the chemical significance of these two publications, it is the opinion of the Court that the Patent Office has erred in interpreting their meaning.

First, both references are wholly devoted to *conjecture* as to the manner in which penicillin is produced biologically by living organisms. The articles do not pretend to be more than observations of the natural processes carried out by mold cells. They are each predicated upon study of mold behaviour. The essence of plaintiff's invention, however,

is that penicillin can be produced independently of the mold environment.

Second, it was shown at trial (and admitted by the Patent Office) that Dr. Sheehan is the only chemist known to have isolated and identified 6–APA at the time of the invention as a free acid, and to have discovered that it was capable of existing independently of the cell substance. The evidence demonstrated that it was only after this step of isolation and identification that the direct acylation of 6–APA to produce penicillin would have suggested itself. If Dr. Sheehan alone knew of 6–APA's existence at the time of the invention, it does not appear likely to the Court that a process including treatment of that substance would have at that time been obvious to a chemist having ordinary skill in the art.

Third, it has been assumed by the Patent Office that Kato's concept of adding phenylacetic acid to the fermentation broth and Hockenhull's mention of an "acylation process" each constituted a disclosure of the plaintiff's step of subjecting 6–APA to "action of an organic acid acylating agent". It was shown by the evidence, however, that the addition of phenylacetic acid to 6–APA is chemically inconsistent with 6–APA's existence. It was established that phenylacetic acid is simply not capable of reacting with 6–APA under conditions that do not destroy the 6–APA molecule. Hence, phenylacetic acid should not have been considered by the Patent Office to be an "acylating agent" within the meaning of the plaintiff's claims. With regard to Hockenhull's mention of an "acylation process", this was stated on the face of his paper to be nothing more than an "assumption" as to the way penicillin is created by a living organism. To posit such an assumption does not constitute a suggestion that a process of this character, even though analogous, could be carried out by direct chemical reaction. This is especially so when one of the essential ingredients (6–APA) of the supposedly analogous chemical reaction was not theretofore identified or isolated by any worker in the art except Dr. Sheehan.

In addition to the evidence showing specific error by the Patent Office in interpreting the teachings of the references, there was also a clear demonstration at trial of the enthusiasm with which the plaintiff's discovery was received by the scientific community and the public. Editorials hailing the plaintiff's achievement have appeared in Time Magazine, the New York Times, and the Boston Herald.[5] Testimony also revealed that scientists familiar with the subject matter expressed incredulity when apprised of the plaintiff's results. While public acceptance or commercial success, standing alone, are not persuasive of patentability, they must be given weight in doubtful cases. Union Metal Mfg. Co. et al. v. Ooms, 81 U.S.App.D.C. 76, 154 F.2d 857 (1946).

It was additionally shown at trial that extensive effort was made by the United States and Great Britain during World War II to study penicillin and methods of producing it. Included in this effort were attempts to arrive at a process for making penicillin by chemical synthesis. Despite the time and money expended, no such methods were found.

The medical importance of the advantages accruing from the chemical synthesis carried out by the plaintiff's method is undisputed. Countless numbers of penicillins, having a variety of side chains, including both natural penicillin and penicillins which cannot be produced by any of the molds, have already been synthesized. Some of the new penicillins have proved effective in combating bacteria that have either acquired resistance to natural penicillins or are inherently immune to them. The benefit to mankind from these new penicillins will be considerable indeed.

The Court is aware of the presumption of validity that attaches to

5. See Brief for Plaintiff, p. 11.

Patent Office decisions,[6] but it is mindful also of its duty to conduct a trial de novo under the provisions of 35 U.S.C. § 145.[7]

In this case it is the opinion of the Court that the totality of the evidence carries a thorough conviction that the Patent Office has erred. Accordingly, the Court finds for the plaintiff and against the defendant, and authorizes the Commissioner of Patents to issue Letters Patent of the United States containing claims 1 through 7 of plaintiff's application.

The above Opinion contains Findings of Fact and Conclusions of Law.

6. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956).

7. Hoover Co. v. Coe, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488 (1945).