**David L. MARCELIUS, and Minnesota Mining and Manufacturing Company, Plaintiffs,**

v.

**David L. LADD, Commissioner of Patents, Defendant (two cases).**

**C. A. Nos. 1089–63, 1090–63.**

United States District Court
District of Columbia.

July 17, 1964.

Farrell Roy Werbow, Stevens, Davis, Miller & Mosher, Washington, D. C., Robert E. Granrud, St. Paul, Minn., for plaintiffs.

Joseph Schimmel, Washington, D. C., for defendant.

JACKSON, District Judge.

These civil actions were brought pursuant to 35 U.S.C. § 145, in which the plaintiffs seek judgment from this Court authorizing the defendant, Commissioner of Patents, to grant Letters Patent of the United States containing certain claims of two patent applications filed by the individual plaintiff, David L. Marcelius.

Civil Action No. 1089–63 involves application Serial No. 722,748, filed March 20, 1958, entitled "Heat Setting of Oriented Organic Film", and the claims at issue therein are claims 15 and 17 to 21, inclusive, of said application.

Civil Action No. 1090–63 involves application Serial No. 820,220, filed June 14, 1959, entitled "Production of High Strength, Thermally Stable Plymeric Film", and the claims at issue therein are claims 1 to 6, inclusive, and 8 to 13, inclusive, of said application.

The actions were consolidated for hearing by oral motion at time of trial.

The earlier filed application, Serial No. 722,748, discloses and claims a process of treating a film of linear condensation superpolymer, such as polyethylene terephthalate, which has previously been stretched to at least 3 times its original dimension in the lengthwise direction only. The process contemplates stretching the film at least 1.2 times in the lengthwise direction only while heated to a temperature above 150°C, and then quenching the film before releasing the tension. The film so treated is said to have improved tensile strength, low heat shrinkability and good resistance to abrasion. It finds use as fabrics, packaging material, and recording tape.

The later filed application, Serial No. 820,220, a continuation-in-part of the earlier application, describes and claims a process of treating similar superpolymer film which has been previously stretched, by stretching it at least 1.2 times in one direction at a temperature within 30°C of its "sticking point", and then quenching the film before releasing the temperature. The film so produced is said to be of high tensile strength, tough, and resistent to abrasion, so as to have special utility as a support member for magnetic recording tape or photographic film.

Both applications describe procedures for stretching (tensilizing) previously stretched film at a temperature high enough (above 150°C) to simultaneously dimensionally stabilize (heat set) the film against shrinkage, when subsequently exposed to heat. The later filed application discloses applying the retensilization to film which has been previously biaxially or uniaxially oriented, while the earlier filed application is limited to film which has been previously oriented in one direction only.

Claims 18 and 20 are representative of the issues presented by the earlier filed application, Serial No. 722,748, and read as follows:

*Claim 18.*

"The process of improving a film of linear condensation superploymer which has previously been oriented by stretching amorphous film at least 3X its original dimension in the lengthwise direction only while heated to a temperature at least as high as the second order transition temperature but sufficiently below the melting point to avoid substantial softening thereof, said process comprising stretching the oriented film continuously at least 1.2X in the lengthwise direction only while heated to heat-setting temperature above 150°C. and sufficiently below the melting point of the oriented film to avoid substantial softening thereof, and quenching the film before releasing the tension of stretching."

*Claim 20.*

"The process of improving a film of polyethylene terephthalate which has previously been oriented by stretching amorphous film at least 3X its original dimension in the length-wise direction only while heated somewhat above 80°C., said process comprising stretching the oriented film continuously at least 1.2X in the lengthwise direction only while heated to a temperature of at least 205°C. but sufficiently below the melting point of the oriented film to avoid substantial softening thereof, and quenching the film before releasing the tension of stretching."

Claim 1 is representative of the issues presented by the later filed application, Serial No. 820,220, and reads as follows:

*Claim 1.*

"The method of continuously retensilizing and simultaneously heatsetting tensilized film of linear condensation superpolymer, said method comprising the steps of (1) feeding the film at a constant input speed into contact across its width with each of a series of axially rotatable surfaces, the tangential distance between consecutive surfaces in the heating the film in contact with the series being 0.5 to 2.0 inches, (2)

series of surfaces to heat-setting temperature above 150°C. and within 30°C. of but less than the lowest temperature at which the optical surface of the film is marred if stretched against a polished brass surface momentarily and peeled therefrom, (3) quenching the film while it is still in contact with the last of the series of surfaces, and (4) pulling the quenched film from the last of the surfaces at a constant output speed at least 1.2 times the input speed."

Claims 1 through 6, 11, 12, and 13 of Serial No. 820,220 were rejected by the Patent Office as being unpatentable over a U. S. Patent to Pace, No. 2,556,-295, in view of a U. S. Patent to Alles, No. 2,767,435. Claims 8, 9 and 10 were rejected by the Patent Office as being unpatentable over the patent to Pace alone.

Claims 15, 18, 20 and 21 of Serial No. 722,748 were also rejected by the Patent Office as being unpatentable over the Pace patent in view of the Alles patent, and claim 17 was rejected by the Patent Office as being unpatentable over Pace alone. All of these claims were also rejected as constituting "double patenting" over claims such as claim 1 of Serial No. 820,220.

All the rejections upon prior art were based upon the language of 35 U.S.C. § 103, and all were affirmed by the Patent Office Board of Appeals.

At trial, additional references were introduced into evidence by counsel for plaintiffs. These references were a second patent to Pace, No. 2,578,899, a patent to Scarlett, No. 2,823,421, and a second patent to Alles, No. 2,884,663. All the references in both cases are owned by a common assignee.

The Pace patent, No. 2,556,295, granted June 12, 1951 on an application filed July 23, 1947, describes methods of stretching shaped structures of linear polyesters, such as filaments, yarns, threads, or films, to provide them with maximum strength, high tenacity, improved transverse properties, improved resistance to acids and alkalis, and improved shrinkage characteristics. Those objects are said to be attained by drawing the polymer structure in two stages at two different temperatures. Polyethylene terephthalate is indicated as a representative polyester (Col. 2, line 35-37), and maximum orientation of the amorphous material is apparently obtained in the primary draw. A stretch of from 3 to 10 times the original length is obtained by the two-stage drawing operation, and with polyethylene terephthalate a draw ratio of 4 to 1 at the primary draw temperature, followed by a 1.5 to 1 draw ratio at the higher temperature is indicated. Example 1, devoted to processing yarn, shows an initial draw temperature of 79°C to 85°C, and a final draw temperature of 160°C to 180°C, after which the drawn material is cooled by contact with a cold roll.

The Alles Patent No. 2,767,435, granted October 23, 1956 on an application filed June 5, 1952, discloses longitudinally stretching film which may be a polymeric polyethylene terephthalate by means of a series of closely spaced rolls, the stretch ratio being determined by the difference in speed between the slow and fast rolls. The patent states that the various essential conditions of stretching, i. e., stretch ratio, rate, and temperature are dependent upon the particular polymeric film composition and the end use of the film. Stretching in longitudinal direction only, and in both directions is disclosed, with different temperatures used for the different directions, depending upon the material and ultimate use.

Since slightly different issues are presented by the claims of the two applications, they will be dealt with separately.

SERIAL NO. 820,220  (C.A. 1090–63)

According to plaintiff's counsel the primary contribution of this application to the prior art is the retensilizing of film, already tensilized, at an extremely high temperature (Tr–12). Reference to claim 1 shows that the high temperature is above 150°C, and within 30°C of but less than the "marring" temperature

of the particular film. For polyethylene terephthalate film the application gives a temperature range of 150°C to 220°C. Though claim 1 also includes a "quenching step" after the heating step, plaintiffs expressly state that they do not base their claim for patentability on quenching following reorientation. It is conceded that quenching, per se, is old.

The basic point at issue with respect to the Pace patent (No. 2,556,295) is whether it discloses (a) treating films as well as yarns pursuant to the procedures described therein, and (b) whether the temperature at which the material is stretched is substantially the same as the temperature at which the plaintiffs have chosen for their retensilization method.

It appears to the Court that the patentee clearly shows a two-stage drawing process that is as applicable to films as it is to yarns. The testimony at trial and the record in the Patent Office discloses that Pace had both materials in mind. As to the second point, the patentee asserted that his second stretching step could be carried out at "high temperatures" above 150°C. In his specific examples he utilized temperatures between 160°C and 180°C for this second step.

The Court cannot say the Patent Office was wrong in concluding that higher temperatures, such as the range of 205°C to 235°C, were obvious in view of this disclosure by Pace.

Product claims 2, 8, 9 and 10, though not directly discussed by plaintiffs' counsel, should be dealt with briefly. Claim 2 defines only a retensilized film of linear condensation superpolymer as produced by the method of claim 1. Since the method of claim 1 is considered to be obvious, as discussed above, the claimed product is likewise considered to be obvious. Claims 8, 9 and 10 set forth distinct physical properties of the product resulting from the claimed method. Since the material being treated and the process for treating it appear to be essentially the same as that shown by the

Pace patent No. 2,556,295, the product produced by Pace would seem inherently to possess the characteristics set forth in these claims.

The plaintiffs have strenuously contended that the patent to Scarlett and the second patent to Alles demonstrate that it was not obvious to Pace himself, or perhaps to Pace's assignee, that the plaintiffs' method could be accomplished at the time plaintiff, Marcelius, filed his application. It has been admitted, however, that the patent to Scarlett and the second patent to Alles both were totally unconcerned with the retensilizing step claimed by the plaintiffs. Therefore, the Court does not believe that the presence or lack of mention of such a step in either of these references bears in any way whatever on the issue of obviousness in this case.

SERIAL NO. 722,748 (C.A. 1089–63)

The process claims at issue in this application were directed to retensilization of film which has been previously tensilized *only* in the direction of retensilization. Otherwise the claims define the same basic procedure as that recited in Claim 1 of application Serial No. 820,220, which both the Patent Office tribunals and plaintiffs' counsel agree is generic to the claims of the instant application. Plaintiff, Marcelius, in testifying regarding this application, admitted that there is nothing new in the first stretching or tensilizing operation (Tr–56), and that the novelty in the second stretching or retensilizing operation "is principally in the high temperature at which it is done, and the extent to which it is done, producing a product which has entirely different properties".

The "high temperature", however, as previously discussed, appears to be obvious in view of the teachings of the Pace patent No. 2,556,295. The sole distinction, therefore, between this application and the other is the limitation in the claims to stretching the material in the longitudinal direction only. While the Pace patent No. 2,556,295 states that it is preferred that two-dimensional orienta-

tions of films take place in two directions at once, it is also suggested that a film may be drawn first in one direction and then another. In view of this it does not seem that the limitation sets forth any patentable difference from the claims in the other application.

Product claims 17 and 19 in this case are subject to the same disabilities as the product claims in application Serial No. 820,220. Since claim 19 is devoted merely to being the product of the method of claim 18, it is not patentable if claim 18 is not. Claim 17, which specifies certain physical properties of the product, necessarily defines only properties inherent in the process of the method claims which have already been found to be unpatentable over the prior art.

### DOUBLE PATENTING

Since none of the claims at issue are found to be unobvious in view of the prior art, and since it was conceded at trial by both parties that the claims could be consolidated in one application through administrative process, it is not necessary for the Court to reach the issue here of whether or not the claims in application No. 722,748 are patentably distinct from those of application Serial No. 820,220.

### CONCLUSION

While the Court feels that plaintiffs' invention contains certain meritorious features, it cannot hold that the evidence adduced at trial is sufficient to overcome the presumption of correctness that attaches to Patent Office adjudications. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, 41–42 (1956).

After reviewing the record in the Patent Office, the evidence at trial, and the briefs of the parties, the Court cannot say it is thoroughly convinced that the Patent Office erred. Accordingly, the Court finds for the defendant and against the plaintiff, and hereby dismisses the Complaint.

The above Opinion contains Findings of Fact and Conclusions of Law.